775 A.2d 395

PRINCE GEORGE'S COUNTY POLICE DEPARTMENT,

v.

Marcos ZARRAGOITIA.

No. 179, Sept. Term, 2000.

Court of Special Appeals of Maryland.

July 2, 2001.

Stephen C. Orenstein, Assistant County Attorney (Sean Wallace, County Attorney, on the brief), Palmer Park, for appellant.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and DEBORAH S. EYLER and CHARLES E. MOYLAN, Jr. (Ret'd Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

The Circuit Court for Prince George's County ruled that a disciplinary action by the Prince George's County Police Department ("the Department"), appellant, against Officer Marcos Zarragoitia, appellee, was time-barred. Specifically, the

court decided that the approval, by the Commander of the Department's Internal Affairs Division, of a "Report of Investigation," did not constitute the filing of charges under section 730(b)(1) of the Law Enforcement Officers' Bill of Rights; instead, charges were filed several months later, and outside of the limitations period, when the Department issued a "Disciplinary Action Recommendation."

The circuit court entered an order enjoining the Department from taking further action against Officer Zarragoitia.[1] On appeal from that order, the Department maintains that the circuit court's decision was legally incorrect. For the following reasons, we disagree and, therefore, we shall affirm the judgment.

## THE LEOBR

Before recounting the particulars of this case, it will be of some help to review the pertinent aspects of the Law Enforcement Officers' Bill of Rights, Md.Code (1957, 1996 Repl.Vol., 2000 Supp.), art. 27, §§ 727–734D ("LEOBR"). The purpose of the LEOBR is "to guarantee certain procedural safeguards to law enforcement officers during any investigation or interrogation that could lead to disciplinary action, demotion, or dismissal." *Meyers v. Montgomery County Police Dep't*, 96 Md.App. 668, 686, 626 A.2d 1010 (1993) (citing *DiGrazia v. County Executive*, 288 Md. 437, 452–53, 418 A.2d 1191 (1980); *Abbott v. Administrative Hearing Bd.*, 33 Md. App. 681, 682, 366 A.2d 756 (1976)); *see also Chief, Baltimore County Police Dep't v. Marchsteiner*, 55 Md.App. 108, 114–15, 461 A.2d 28 (1983) (quoting *Nichols v. Baltimore Police Dep't*, 53 Md.App. 623, 455 A.2d 446 (1983)). "[T]hose safeguards include standards governing the investigation of complaints against an officer, the right to a hearing following a recommendation for disciplinary action, and standards governing the conduct of such a hearing and the decision of the hearing

---

**1.** The petition for injunctive relief was filed pursuant to Md. Ann.Code (1957, 1996 Repl.Vol., 2000 Supp.), art. 27, section 734. *See* discussion at n. 5, *infra.*

board." *Cochran v. Anderson,* 73 Md.App. 604, 612, 535 A.2d 955 (1988) (discussing *Abbott v. Administrative Hearing Bd., supra,* and citing *Elliott v. Kupferman,* 58 Md.App. 510, 473 A.2d 960 (1984)).

The LEOBR "looks to what is essentially a two-phase administrative process. The first phase involves an internal investigation to determine whether there is some substance to the complaint or suspicion." *Chief, Montgomery County Dep't of Police v. Jacocks,* 50 Md.App. 132, 135, 436 A.2d 930 (1981). Section 728(b) governs the manner in which the law enforcement agency conducts this internal investigation, spelling out the conditions under which the agency may investigate and interrogate a law enforcement officer and the officer's rights during the investigatory phase. *Id.; DiGrazia,* 288 Md. at 439–40, 418 A.2d 1191; *Abbott,* 33 Md.App. at 682–83, 366 A.2d 756. Sections 730 and 731 govern the second phase, *i.e.,* "an adjudicatory hearing before a departmental hearing board to determine (1) whether the charge itself is valid, and (2) if so, what the punishment should be." *Jacocks,* 50 Md.App. at 135, 436 A.2d 930; *see DiGrazia,* 288 Md. at 440–41, 418 A.2d 1191; *Abbott,* 33 Md.App. at 683, 366 A.2d 756. Under section 731, the final decision is made by the Chief of Police, upon review of the findings, conclusions, and recommendations of the hearing board.

The LEOBR was enacted in 1974. *See* 1974 Md. Laws Chap. 722. The one-year statute of limitations contained in section 730(b)(1) was added in 1988, by passage of Senate Bill 632. 1988 Md. Laws Chap. 330. Currently, section 730(b)(1) provides:

*Limitation of actions.*—(1) Administrative charges may not be brought against a law enforcement officer unless filed within 1 year after the act that gives rise to the charges comes to the attention of the appropriate law enforcement agency official.[2]

---

**2.** Section 730(b)(2) provides that the one-year statute of limitations "does not apply to charges related to criminal activity or excessive force."

The Floor Report of the Senate Judiciary Committee for Senate Bill 632, at page 1–2, explained the purpose of the bill as follows:

Current law does not provide a time limit for the filing of administrative charges against a law enforcement officer under the Law Enforcement Officers' Bill of Rights.

Testimony indicated that there have been many instances where a law enforcement officer who has committed a minor infraction has had that minor infraction held over his head for an extended period of time, resulting in significant uncertainty as to when, or even if, any disciplinary action is to be taken. The types of minor infractions referred to in this bill include administrative offenses such as improper wearing of a uniform, or not completing or signing a gasoline trip ticket. It is unfair, unreasonable, and serves no useful purpose to allow a supervisor to withhold the filing of such administrative charges indefinitely.

At some point, supervisory officials should be required either to file the administrative charge against the officer or to drop the charge so that the officer is relieved of the anxiety and concern that results from not knowing if or when the charge will be officially brought against the officer.

See also *Baltimore Police Department v. Etting*, 326 Md. 132, 138, 604 A.2d 59 (1992).

## FACTS AND PROCEEDINGS

### The Incident

On November 23, 1997, Officer Zarragoitia attended a football game at Jack Kent Cooke Stadium (now FedEx Field), in Prince George's County. He was off-duty. During the game, Officer Zarragoitia allegedly got into an argument with a concessions vendor and used derogatory and foul language. Several officers in the Department were working as security for the game. When they responded to the incident, Officer Zarragoitia allegedly used abusive language toward them as well.

### Report of Investigation

° Captain Ellis G. Jones, the Commander of the Department's Internal Affairs Division, filed a formal complaint against Officer Zarragoitia based on the incident of November 23, 1997. The complaint alleged that Officer Zarragoitia had acted in a manner unbecoming to an officer and had used abusive language. On December 5, 1997, Sergeant Regina Taylor began a formal investigation of the complaint. It was her task to determine whether the allegations were "sustained," *i.e.,* supported by sufficient evidence to warrant proceeding to the adjudicatory stage of the disciplinary proceedings.

Under the Internal Affairs Division Standard Operating Procedures ("SOP"), upon completion of her investigation, Sergeant Taylor was to prepare a final "Report of Investigation" ("ROI"). SOP, at 6. The Department's procedures provide that a ROI is to be prepared regardless of the outcome of an investigation and is to be "submitted to the Commander [of the] Internal Affairs Division, within 90 calendar days of initial assignment, for review." SOP, at 60. The ROI must include:

- [An] accounting of any evidence related to the incident
- [An] incident summary
- Opinions as to the legitimacy of the allegations
- Recommendations to dismiss the complaint or recommendation for disciplinary action
- Written statements from all involved persons when pertinent
- If disciplinary action is recommended, [classification of] the violation(s) . . . by category.

Department General Orders Manual, § 3/811.05. Although the ROI includes an account of the incident for which the Department may seek a recommendation of disciplinary action before an Administrative Hearing Board ("Board"), it does not require the exact language of the charges or reference the sections of the General Orders Manual or the Prince George's County Code on which the charges may be based. Nor does it

necessarily provide a detailed description of the facts underlying the charges.

On June 12, 1998, Sergeant Taylor submitted a ROI to Captain Jones that sustained the allegations against Officer Zarragoitia and recommended that he be charged with one count of unbecoming conduct and three counts of abusive language.

Captain Jones's responsibilities as Commander of the Internal Affairs Division included overseeing internal investigations, reviewing the findings of those investigations, making recommendations based on those findings, and initiating formal disciplinary proceedings against law enforcement officers. On June 22, 1998, Captain Jones approved the ROI respecting Officer Zarragoitia, including Sergeant Taylor's finding that the allegations against him were sustained and her recommendation of charges.

Under section 3/811.05 of the Department's General Orders Manual, once a ROI is approved by the Commander of the Internal Affairs Division, it is to be sent "through the chain of command to the Chief [of Police]." The SOPs also provide that the Commander of Inspectional Services has final approval of all completed investigations before they are submitted to the Chief of Police. SOP, at 7. The Commander of Inspectional Services can uphold, revise, override, or add to the recommended charges. In addition, he can use the ROI to brief the Chief of Police.

Sometime between June 12, 1998, and the end of October 1998, Captain Jones sent the ROI in the Zarragoitia matter to the Commander of Inspectional Services, Major Robert Fuller.[3] Major Fuller used the ROI to brief the Chief of Police on the status of the case. On November 5, 1998, Major John Lindsay, who had replaced Major Fuller on October 30, 1998, sent the case file to the Human Relations Committee ("HRC") and the Citizens Complaint Oversight Panel ("CCOP"). The

---

**3.** The dates on which many of these events occurred are not specified in the record.

HRC is an independent body whose purpose is to promote fair and impartial investigations. The CCOP examines all completed investigations into allegations of excessive force, harassment, and abusive language. Neither body can override the recommendations of the Commander of Internal Affairs, the Commander of Inspectional Services, or the Chief of Police. The HRC declined to review the Zarragoitia matter. On December 22, 1998, the CCOP approved the three allegations of abusive language against Officer Zarragoitia and returned the case file to Major Lindsay.[4]

### Disciplinary Action Recommendation

Thereafter, Major Lindsay returned the Zarragoitia file to Captain Jones so he could give it to Sergeant Gordon Pinnell, the Department's Administrative Hearing Board Coordinator, for Sergeant Pinnell to draft a document known as the Disciplinary Action Recommendation ("DAR"). The Department only issues a DAR if allegations against a law enforcement officer have been sustained. The DAR is in the form of a letter by the Commander of the Internal Affairs Division to the officer. It must include specific charges, with citations to the Department's General Orders Manual or the Prince George's County Code, and must recite with factual detail the misconduct in support of each charge. Unless the Department and the officer agree otherwise, the charges and factual descriptions in the DAR guide the Board in its decision-making. Thus, if the ROI and the DAR are in conflict, the Department must prove the charge as worded in the DAR.

In cases involving minor infractions, the DAR may set forth a summary punishment that the law enforcement officer may accept in lieu of a hearing before the Board. If the officer accepts the summary punishment, he does not receive the ROI. If he declines to accept the summary punishment and demands a hearing, the Department redacts the summary punishment provision from the DAR and submits the redacted

---

4. Because the one count of unbecoming conduct did not involve abusive language, the CCOP did not review that allegation.

DAR to the Board. The officer then is given the ROI. The Board only will see the ROI if it is introduced into evidence by one of the parties.

As the Administrative Hearing Board Coordinator, Sergeant Pinnell could accept the recommendations made in the ROI, as approved by Captain Jones, or, with the further approval of Captain Jones, delete, revise, or add to the allegations sustained in the ROI. If that were done, the ROI would be supplemented to reflect the change.

In the beginning of January 1999, the Department informed Officer Zarragoitia that he had not received a promotion. Officer Zarragoitia reacted by contacting Philip Constantino, a consultant for the Fraternal Order of Police. Mr. Constantino in turn contacted Major Lindsay, who revealed that Officer Zarragoitia had not received a promotion because of his behavior on November 23, 1997. Mr. Constantino asked when the Department would be contacting Officer Zarragoitia about any charges stemming from the November 23, 1997 incident. Major Lindsay responded that charges "were going to be filed" and "should be forthcoming in the next two weeks."

On January 4, 1999, Captain Jones signed the DAR respecting the November 23, 1997 incident. In the DAR, Captain Jones stated that the "investigative report" prepared by Sergeant Taylor respecting Officer Zarragoitia's actions of that date "ha[d] been reviewed" and that, "[i]n light of the information provided by Sergeant Taylor's report," Captain Jones was "charging" him with four violations of the General Orders Manual. The DAR lists the violations separately and designates them as "Charge # 1," "Charge # 2," "Charge # 3," and "Charge # 4." All four charges were for "Unbecoming conduct." In deposition, Captain Jones explained that while the Department refers to the allegations in the complaint and recommendations by the investigator as "counts" or "allegations," when it issues the DAR, it refers to the allegations as "charges."

The DAR set forth separate factual synopses for each charge and recited the specific facts underlying each charge.

It stated that, "under the authority delegated to me by the Chief of Police, you are hereby advised that I [Captain Jones] am recommending disciplinary action" for these charges. The DAR did not give Officer Zarragoitia the option of accepting summary punishment in lieu of disciplinary proceedings.

## Circuit Court Proceedings

On April 27, 1999, Officer Zarragoitia filed a petition for a show cause order in the Circuit Court for Prince George's County, pursuant to section 734 of the LEOBR.[5] He alleged that the Department's disciplinary action against him was time-barred under section 730(b)(1). Specifically, he asserted that the issuance of the DAR constituted the filing of administrative charges and that that had not occurred until more than one year after the latest time at which the incident had come to the attention of the appropriate law enforcement agency official (December 5, 1997).

On April 28, 1999, the court ordered the Department to show cause why Officer Zarragoitia's request for relief should not be granted. The Department responded, asserting that Captain Jones's June 22, 1998 approval of the ROI constituted the filing of administrative charges. Therefore, it argued, charges had been timely filed under section 730(b)(1).

Discovery went forward and the parties submitted memoranda of law. The court held an evidentiary hearing on Febru-

---

5. This section provides, in pertinent part:

   Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.

   Md. Ann.Code (1957, 1996 Repl.Vol., 2000 Supp.), art. 27, § 734; *see Cochran v. Anderson, supra,* 73 Md.App. at 616, 535 A.2d 955 ("[A]lthough we believe that the court has the power under § 734 to terminate [a] LEOBR proceeding, that is an extraordinary form of relief that ought not to be granted except in the most unusual case."); *Chief, Baltimore County Police Dep't v. Marchsteiner, supra,* 55 Md.App. at 115, 461 A.2d 28.

ary 29, 2000. Officer Zarragoitia testified on his own behalf and also called Mr. Constantino. Sergeant Pinnell and Captain Jones testified on behalf of the Department. At the conclusion of the hearing, the court held the matter *sub curia*.[6]

On March 10, 2000, the trial court issued a memorandum opinion and order enjoining the Department from taking any further disciplinary action against Officer Zarragoitia for the November 23, 1997 incident. The trial court ruled, based on the parties' legal memoranda, deposition testimony that was moved into evidence, and in-court testimony, that the ROI "is not a charging document. It merely states whether the Internal Affairs investigator, based on his or her investigation of the allegations against a particular officer, *recommends* that administrative charges be filed. It is the Disciplinary Action Recommendation [that serves] as the charging document." (Emphasis in original.)

This appeal followed. Additional facts will be recited as pertinent to our discussion.

## DISCUSSION

The parties agree that December 5, 1997 (the day that Sergeant Taylor began her investigation), was the latest date on which the one-year limitations period in section 730(b)(1) began to run. Relying exclusively on *Wilson v. Baltimore City Police Department*, 91 Md.App. 436, 604 A.2d 942 (1992), the Department argues that Captain Jones's June 22, 1998 act of approving the ROI constituted the filing of administrative charges, under section 730(b)(1), and therefore the charges were filed timely. Officer Zarragoitia responds that Captain Jones's approval of the ROI did nothing more than pass the ROI up the chain of command for further review of the allegations in the complaint and Sergeant Taylor's recommendations. He maintains that the circuit court correctly concluded that it was the Department's issuance of a DAR on January

---

**6.** The court also asked the parties for relevant legislative history on the LEOBR. Officer Zarragoitia filed a second supplemental memorandum of law on March 3, 2000.

.4, 1999, that constituted the filing of administrative charges. Because that did not occur until more than one year after December 5, 1997, the charges were time-barred.

In an action tried without a jury, we review the case on both the law and the evidence. Md. Rule 8–131(c). We must accept the trial court's findings of fact unless they are clearly erroneous. *In re Joshua David C.,* 116 Md.App. 580, 592, 698 A.2d 1155 (1997) (citing *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356 (1990)). With respect to questions of law, however, we do not defer to the decision of the trial court; rather, we must be satisfied that the trial court was legally correct. *Baran v. Jaskulski,* 114 Md.App. 322, 331, 689 A.2d 1283 (1997). Because in this case the Department does not challenge any of the trial court's factual findings, but instead maintains that the court was legally incorrect in its ruling, we review the court's decision *de novo.*

In matters of statutory interpretation, our aim is to "ascertain and effectuate legislative intent." *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347 (1995) (citations omitted); *see Prince George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898 (1995) (citations omitted). In discerning legislative intent, we first examine the language of the statute, giving the words their ordinary meaning. *Garnett v. State,* 332 Md. 571, 585, 632 A.2d 797 (1993) (citations omitted). Even if the plain language of the statute is clear and unambiguous, we may use extraneous interpretive aids, such as legislative purpose, history, and context to confirm our interpretation. *Smith v. State,* 115 Md.App. 614, 621, 694 A.2d 182 (1997) (citing *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339 (1996)); *see Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 514, 525 A.2d 628 (1987).

When interpreting a statute, we consider its underlying purpose and attempt to read it so as to effectuate that purpose. *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975) (citing *Walker v. Montgomery County,* 244 Md. 98, 223 A.2d 181 (1966); *Mitchell v. State,* 115 Md. 360, 80 A. 1020

(1911)). "When the plain meaning of the language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128 (1998) (citations omitted). Nonetheless, "[w]e ordinarily avoid the construction of a statute which leads to unreasonable, illogical, unjust or nonsensical results." *Board of County Comm'rs v. Bell Atl.—Md., Inc.,* 346 Md. 160, 179, 695 A.2d 171 (1997) (citing *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177 (1990); *Pan Am. Sulphur v. State Dep't,* 251 Md. 620, 627, 248 A.2d 354 (1968)).

In *Wilson v. Baltimore City Police Department, supra,* 91 Md.App. 436, 604 A.2d 942, which is the linchpin of the Department's argument, one Anthony Smelgus filed a complaint with the Baltimore City Police Department ("BCPD") against Officer Deborah White. After the Internal Investigation Division of the BCPD concluded its investigation of the complaint, Officer White's commanding officer signed a "Departmental Charging Document." The charging document was sent to the Administrative Bureau of the BCPD, where Deputy Commissioner Ronald Mullins approved the charges. That occurred within one year of the date that Smelgus filed his complaint. By the time that Officer White received the "Departmental Charging Document," however, more than a year had elapsed since Smelgus had filed his complaint. After Officer White received the charging document, she petitioned the Circuit Court for Baltimore City to enjoin the BCPD and the Police Commissioner from pursuing disciplinary action against her.

Officer White argued that for the BCPD to meet the one-year limitations provision of section 730(b)(1), it was required to notify her of the charges within that one-year period. She maintained that because the BCPD had failed to do so, her disciplinary action was time-barred.

The trial court granted summary judgment in favor of the BCPD and the Police Commissioner. We affirmed, concluding that the plain language of section 730(b)(1), providing that

charges be filed within the one-year period, did not support Officer White's interpretation that it was necessary for the officer to have received notice during that period. Noting that other provisions of the LEOBR mandate that the law enforcement agency "give notice" of charges to the officer, and specify how notice is to be given, we observed that, had the General Assembly intended section 730(b)(1) to mean that the officer must be "notified" of the charges within one year, it would have said so. Accordingly, we held that,

> *when charges against a police officer recommending disciplinary actions are presented to and approved by one authorized to initiate formal proceedings against the officer, the charges have been filed, as required by § 730(b)(1) of the LEOBR.* At that point, the charges against the officer become a matter of record, subject to adjudication. In Baltimore City, the law enforcement agency official authorized to approve charges against a police officer is the Deputy Commissioner of Police responsible for supervising that officer. Inasmuch as Deputy Commissioner Mullen signed the charges against [White] on July 6, 1990, the LEOBR statute of limitations had not expired. Any other interpretation of the use of the word "filed" in § 730(b)(1) of the LEOBR defies common sense and is inconsistent with the weight of authority.

*Id.* at 441–42, 604 A.2d 942 (emphasis added).

The Department seizes upon the italicized language quoted above to argue that Captain Jones's approval of the ROI, on June 22, 1998, was the approval of charges against Officer Zarragoitia, and therefore was the filing of charges, within the meaning of section 730(b)(1). We disagree that *Wilson* compels such a conclusion.

In *Wilson*, we were not so much addressing what constitutes the filing of administrative charges under section 730(b)(1) as we were addressing whether whatever actions constitute filing must include actual notification to the officer of the charges. We held that "filing" of charges does not require actual notification under any commonsense interpreta-

tion of the statutory language. There was no dispute in *Wilson* that the document presented by the BCPD was a statement of charges so that, if and when filing occurred, charges would be filed within the meaning of section 730(b)(1). By contrast, in the case *sub judice*, the issue is whether the document that Captain Jones approved on June 22, 1998—the ROI—constituted "charges" under section 730(b)(1), so that by approving the document, the charges became "filed." We did not address that question in *Wilson.*

*Black's Law Dictionary* defines "charge" as "[a] formal accusation of a crime as a preliminary step to prosecution," and a "charging instrument" as "a formal document—usu[ually] either an indictment or an information—that sets forth an accusation of a crime." *Black's Law Dictionary* 227 (7th ed.1999). In the criminal context, the Court of Appeals has explained the purposes of a charging document as follows:

> (i) to put the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (ii) to protect the accused from a future prosecution for the same offense; (iii) to enable the defendant to prepare for his trial; (iv) to provide a basis for the court to consider the legal sufficiency of the charging document; and (v) to inform the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case.... We have recognized several times in the past that, in order to place an accused on adequate notice, two different types of information ought to be provided by the charging document. First, it is essential that it characterize the crime, and second, it should furnish the defendant such a description of the particular act alleged to have been committed as to inform him of the specific conduct with which he is charged.

*Ayre v. State,* 291 Md. 155, 163, 433 A.2d 1150 (1981) (citations omitted); *see also Campbell v. State,* 325 Md. 488, 494, 601 A.2d 667 (1992) (quoting *Williams v. State,* 302 Md. 787, 791, 490 A.2d 1277 (1985)).

▉▉▉▉ Similarly, an "administrative charge," as contemplated by section 730(b)(1), is a formal accusation of misconduct that evidences a decision by the agency to proceed against the law enforcement officer and marks the beginning of the adjudicatory phase of the proceeding. *See* Floor Report on Senate Bill 632, *supra*, at 1–2. The charging document should detail the act or acts of misconduct the officer is accused of having committed, and the laws, rules, or regulations he is alleged to have violated, so that he has the necessary information to adequately defend himself and so that the Board can assess the sufficiency of the charge and of the evidence presented and, if necessary, decide an appropriate sanction.

▉▉▉▉ The procedures adopted and followed by the Department make plain that when the Commander of the Internal Affairs Division approves a ROI, he is not making a decision for the agency to pursue a disciplinary action against the officer in question. Of necessity, such a decision would involve the exercise of discretion *in favor of prosecution.* Yet, the ROI may be approved by the Commander of the Internal Affairs Division irrespective of whether it recommends that the allegations against the officer be sustained. Accordingly, that act of approval merely culminates the Internal Affairs Division's investigation of the allegations against the law enforcement officer, and no more.

That the ROI approval by the Commander of Internal Affairs does not mark a decision to proceed against the officer is further evidenced by the fact that after the approval takes place, the ROI is subject to review up the chain of command. During this post-approval ROI review period (which, in deposition, Officer Pinnell referred to as the "second layer of review"), the Commander of Inspectional Services and the Chief of Police each consider the approved ROI and can reject it *in toto* or return it for additional investigation. The HRC and CCOP also have input into it. Thereafter, when the DAR is being drafted, changes or additions can be made to the allegations in the approved ROI by the Administrative Hear-

ing Board Coordinator and the Commander of the Internal Affairs Division. Thus, approval of the ROI does not finalize the accusations of misconduct against the officer; rather, it is but one step in an on-going investigation and review process that concludes when the DAR is issued. The charges stated in the DAR as well as the facts on which they are based may differ considerably from the allegations sustained in the ROI.[7] We disagree with the Department's position that the act of approving an internal investigation that is essentially preliminary and tentative signifies a decision to prosecute.

The substance and language of the ROI, both in terms of what it says and does not say, also militate against the conclusion that it is a charging document. The ROI reads like an investigatory, fact-finding report. It lists the names and addresses of witnesses and recounts their versions of the pertinent events. Its sections assessing the "legitimacy of the allegations" and the "potential for dismissing the complaint," which provide internal analyses of the case from the prosecutor's perspective, belie a final decision to pursue charges and

---

7. The instant case illustrates how there can be a significant difference between the recommendations in the ROI and the administrative charges set forth in the DAR. In the ROI, Sergeant Taylor recommended one count of "unbecoming conduct" and three counts of "abusive language" against officer Zarragoitia. In contrast, all of the administrative charges in the DAR cite the "unbecoming conduct" chapter of the Prince George's County Police Department General Orders Manual. The DAR charged Zarragoitia with one charge of "excessive, unwarranted, or unjustified behavior that would reflect poorly on themselves, the Department, or the [Prince George's] County government, regardless of duty status" and three charges of "using harsh, violent, profane or derogatory language which would demean the dignity of any person."

Furthermore, the differences between the recommendations in the ROI and the charges in the DAR may affect the facts that the Board must find to impose discipline on a law enforcement officer. According to the recommended charges prepared by Sergeant Taylor and approved by Captain Jones, Officer Zarragoitia was "intoxicated" during the November 23, 1997 incident and his behavior "escalated" the severity of the situation. Yet, as set forth in the DAR, the administrative charges submitted to the Board did not require the Department to demonstrate that officer Zarragoitia was intoxicated or that his actions escalated the severity of the November 23, 1997 incident.

serve none of the purposes of a charging document. It does not list the charges against the officer or make reference to the controlling statutes, rules, or regulations. At most, the approved ROI serves as a "rough draft" for the Department to use as a starting point for drawing up eventual administrative charges.[8]

The way the approved ROI is used also is inconsistent with it being a charging document. As we have pointed out, an officer against whom allegations are sustained in a ROI that is then approved will not receive the ROI until after a DAR has been issued. The ROI is given to him when the parties are preparing for the hearing before the Board, essentially as a discovery disclosure. Moreover, the Board is not provided with the ROI unless one of the parties introduces it into evidence. Clearly, therefore, the Board does not use the ROI as a charging document.

In contrast to the ROI, the DAR, which is issued only after the Department has committed itself to adjudicatory proceedings, informs the law enforcement officer of the nature of the administrative charges against him, regardless of whether summary punishment is imposed, sets forth the exact language of the charges, cites the controlling disciplinary provisions of the General Orders Manual and the Prince George's County Code, explains the burden of proof, and describes the circumstances under which the Board may impose discipline.

Finally, the legislative purposes behind the one-year limitations period of section 730(b)(1) for administrative charges against police officers, other than charges related to criminal activity or excessive force, would not be served by the interpretation urged by the Department. Section 730(b)(1) was enacted because "[i]t is unfair, unreasonable, and serves no useful purpose to allow a supervisor to withhold the filing of such administrative charges indefinitely." Floor Report for the Senate Judiciary Committee for Senate Bill 632, at 1. Yet,

---

8. Indeed, Sergeant Pinnell testified that it would be unethical for the Department to force a law enforcement officer to defend himself against the allegations set forth in the ROI.

under the Department's interpretation of the law, it could do just that. So long as the ROI were approved within a year of the act coming to the attention of the appropriate person, the one-year limitations period would be satisfied even though the ROI would be under consideration in a "second layer of review," would not be disclosed to the officer, and would be subject to being changed or entirely withdrawn. By approving, within the one-year period, a non-binding proposal to charge the officer, in a document that in form, purpose, and use is internal, the Department would give itself an indefinite, unlimited period of time in which to file charges. During that indefinite and unlimited period, the officer would have no information about the proposed charges, no means to prepare a defense, and no way to force the matter to a conclusion. It is difficult to conceive a procedure more ill-suited to relieving "the anxiety and concern that results from not knowing if or when the charge will be officially brought against the officer." *Id.*

We hold that, under section 730(b)(1) of the LEOBR, administrative charges were filed against Officer Zarragoitia when the Department issued the DAR, on January 4, 1999. Because the charges were filed more than one year after the latest day on which Officer Zarragoitia's alleged acts were brought to the attention of the appropriate person, also within the meaning of section 730(b)(1), the Department's disciplinary proceeding against him was time-barred. Accordingly, the circuit court properly enjoined the Department from pursuing that proceeding.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**