*Baltimore Police Department v. James Brooks et al.*
Case Nos. 979, 980, 982, 983, 985, 988, 989, 991, 992, 993, 994, September Term 2019,
Argued, 05/12/2020
Opinion by Harrell, J.

**HEADNOTE**

**PUBLIC SAFETY – LAW ENFORCEMENT OFFICERS' BILL OF RIGHTS – FILING ADMINISTRATIVE CHARGES**

For a police department to "file[] the charges" under Md. Code, Pub. Safety § 3-106(a) in an administrative disciplinary action against an officer, it must act with some level of formality. The Baltimore City Police Department's practice was to require a signature as the final step before charges may be served upon an officer. As the signatures in each of the disciplinary action cases here were affixed on dates after the expiration of the one-year limitation period in § 3-106, the police department failed to charge timely the covered officers. The circuit court was correct in dismissing the charges.

Circuit Court for Baltimore City
Case No. 24-C-19-001466, 67, 68, 69, 70, 71, 72,
1126, 1321, 1324, 1325

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 979, 980, 982, 983, 985, 988, 989, 991,
992, 993, 994

September Term, 2019
_____

BALTIMORE POLICE DEPARTMENT

v.

JAMES BROOKS, ET AL.

_____

Meredith,
Beachley,
Harrell, Glenn T., Jr.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.
_____

Filed:  July 30, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

"When will you make an end?

When I am finished."

> Exchange between Pope Julius II (Rex Harrison) and Michelangelo (Charlton Heston) (regarding painting the ceiling of the Sistine Chapel), "The Agony and the Ecstasy" (1965, 20th Century Fox).

These cases[1] call upon us to engage in the frequent judicial task of interpreting ambiguous language in a State statute—in this case, the Law Enforcement Officers' Bill of Rights ("LEOBR").[2] In doing so, we must reconcile the policy and practice of a specific police department regarding that interpretation. This enactment regulated principally the administrative process of how covered law enforcement employers investigate, charge, and discipline their covered law enforcement personnel with regard to misconduct deemed to have violated applicable laws, departmental regulations, and departmental policies. The present cases focus on a single provision of the LEOBR, codified originally as Md. Code, Art. 27 § 730(b)(1) in 1988, and revised in Md. Code, Pub. Safety § 3-106(a) in 2003 (without substantive change), that established a one-year period for the employer to decide whether to charge an employee and the required act for tolling that limitation period. The provision states that:

> [A] law enforcement agency may not bring administrative charges against a law enforcement officer unless the agency *files the charges* within 1

---

[1] Eleven cases, involving a total of fifteen police officers, are consolidated for purposes of this opinion because each case poses the same legal question.

[2] LEOBR was adopted originally by the Maryland General Assembly in 1974 (1974 Md. Laws Chap. 722).

year after the act that gives rise to the charges comes to the attention of the appropriate law enforcement agency official.[3]

The parties disagree over what constitutes the filing of charges. The Legislature did not provide a definition in the LEOBR. The relevant legislative history does not contain a clear clue as to what would satisfy the act of filing of charges. This Court has twice considered related questions regarding § 3-106(a), but neither involved circumstances like those in the present cases, though there is much in the opinions in those two cases that we find helpful here, as we shall explain shortly. *See Wilson v. Baltimore City Police Department*, 91 Md. App. 436 (1992)*; see also Prince George's County Police Department v. Zarragoitia*, 139 Md. App. 168 (2001).

## I.

In enacting LEOBR, the Legislature appears to leave to local police departments the task of putting in place their own policies and practices regarding what constitutes the filing of charges. The Baltimore Police Department ("BPD") enacted a departmental written policy it believes complies with the LEOBR regarding administrative discipline of its officers. Seeking discipline against the fifteen officers here, the BPD deemed the charges filed when, during closed-door committee meetings[4]—the records in these cases contain no evidence of any minutes of the meetings assertedly kept and which, even assuming minutes were kept, would not be given to or made available otherwise to an ultimately

---

[3] Emphasis is added to highlight the key phrase which is in dispute.

[4] By "closed-door committee meetings," we mean that only departmental personnel attended, but did not include the officer against whom a complaint was lodged or his/her counsel or union representative.

charged officer—held during the required one-year period, the police commissioner's designee orally approved the charges. In every case, however, the police commissioner's designee (who attended reportedly the committee meetings in person or by phone) did not memorialize in writing his alleged oral approval until after the expiration of the one-year limitation period. Nonetheless, the BPD urges that the oral approval given by the commissioner's designee at the meeting was sufficient to toll the limitation period.

The officers sued in the Circuit Court for Baltimore City to foreclose the adjudication of the charges brought against them because the limitation period under § 3-106(a) had run before the commissioner's designee evinced timely his approval of filing charges by signing the required paperwork generated by the closed meetings.[5] The circuit court determined that the phrase "files the charges" in § 3-106(a) "requires some measure of formality," in order to provide a court with a means to review the action should an officer seek a judicial remedy. The court determined that the BPD had installed a practice or policy of requiring the commissioner's designee's signature on the final draft of a charging document. As a result, the one-year limitation period had run for each of the fifteen cases. The circuit court dismissed the charges. The BPD appealed timely.

## II.

### A. Background – In a Nutshell

---

[5] When an officer is denied a right granted by the LEOBR, he or she may apply to a circuit court for an order "that directs the law enforcement agency to show cause why the right should not be granted." Md. Code, Pub. Safety § 3-105(a).

3

Md. Code, Pub. Safety § 3-106(a) states, as noted earlier, that:

A law enforcement agency may not bring administrative charges against a law enforcement officer unless the agency files the charges within 1 year after the act that gives rise to the charges comes to the attention of the appropriate agency official.

As noted earlier, no further explanation, elaboration, or definition is provided in the statute regarding the phrase "files the charges," or in the legislative history of each relevant enactment.

In the absence of legislative direction on when charges are deemed to be filed, police departments are left to adopt their own policies and/or practices regarding the administrative disciplinary process. The BPD adopted a relevant written policy, Policy 308, on 13 September 2017. It states, in relevant part, that its Office of Professional Responsibility (the "OPR") shall investigate allegations of misconduct by officers and determine whether the allegations are sustained.[6] If the allegations are deemed sustained, the OPR submits proposed charges to the Disciplinary Review Committee (the "DRC"). The DRC, consisting of sworn and civilian members of the BPD appointed by the police commissioner, review the factual findings of the OPR and reputedly a draft of proposed charges, before making a recommendation for discipline.

Once the DRC crafts its recommendations, the police commissioner's designee[7] is tasked with approval responsibility over the recommendations, "as is" or as may be

---

[6] "Sustained" means that, by a preponderance of the evidence, the record before the OPR establishes that the alleged misconduct occurred.

[7] Although the police commissioner is authorized to perform this function personally, on the record before us, it was the police commissioner's designee who attended the DRC meetings.

4

amended. It is claimed by the BPD that the designee's approval occurs verbally initially at the closed-door DRC meeting. According to the "Disciplinary Flow Chart" contained in Policy 308, the commissioner's designee's approval of charges is the final step prior to serving charges on the officer in question, who then either may accept or contest the discipline. Neither the flow chart, nor the text of Policy 308, addresses, however, how or when in the process the commissioner's designee's *final* approval is evinced. The Policy fails also to provide a definition for when the charges are deemed filed.

It has been, at all times relevant to the present cases, the practice of the BPD that, at some point following completion of a DRC meeting, a member of the DRC and the commissioner's designee, respectively, sign a form titled "Baltimore Police Department Internal Affairs Transmittal Cover," referred to also as the charging document. This document lists the accused officer, the investigated allegations, whether the allegations were sustained, a summary of the facts, and a handwritten recommendation for discipline. Notably, on pages 4-6, the form document provides signature and dating lines. These lines are signed and dated by first the DRC representative and then the commissioner's designee, which acts may be concurrent or sequential. It also has sections displaying the date the charged officer is served and acknowledgement of service.[8] Counsel for BPD, at the final hearing before the circuit court regarding the present cases, claimed that the BPD did not require the execution of this document by the DRC representative or the commissioner's

---

[8] The acknowledgement of service section provides the officer with three options: 1) Acceptance of Punishment; 2) Acknowledgement of Non-Punitive Counseling and/or Training; or 3) Request for an Administrative Hearing Board.

5

designee as part of the disciplinary process described in Policy 308; however, counsel acknowledged also that, to her knowledge, the BPD had never participated in a hearing based on charges without the signature of approval by the commissioner's designee.

In each of the cases, the commissioner's designee's signature on the form signifying approval was not affixed until after the expiration of the one-year period.[9]  The record contains no basis for determining what any draft charges may have looked like if presented to the DRC and, therefore, there is no basis to compare them to the final charges served upon the officers.  Thus, we have no way of knowing whether amendments were made between the DRC meetings and the sign-offs by the commissioner's designee.

## B.  More Background – A Deeper Dive

The BPD received a complaint regarding Officer James Brooks on 3 October 2017. Officer Brooks was alleged to have failed to secure a building properly while detectives were seeking a search warrant for the premises.  The DRC met to review the OPR findings and consider a discipline recommendation on 2 October 2018.[10]  The commissioner's designee signed-off on final charges and discipline on 4 October 2018.

The BPD received a complaint regarding Officer Damond Durant on 10 November 2017.  Officer Durant was alleged to have failed to identify himself as a police officer and

---

[9] In three instances, for unexplained reasons, officers were served prior to the commissioner's designee signing-off on the final charging documents.  Those charges were against Officers Damond Durant and Jonathan Boyer and Sergeant Steve Histon.  We concluded in *Wilson v. Baltimore City Police Dept.* that providing notice to a police officer is not the same as filing the charges.  91 Md. App. 436 (1992).  Thus, the early notice to these three officers plays no substantive role in our analysis of the question at hand.

[10] In each case, the DRC meeting occurred within 365 days of the BPD learning of the complaint.

to have displayed his handgun during an off-duty encounter with two individuals suspected to be engaged in a crime. The DRC met to review the OPR findings and consider a discipline recommendation on 8 November 2018. The commissioner's designee signed-off on final charges and discipline on 31 January 2019.

The BPD received a complaint regarding Sergeant Jared Fried on 18 October 2017. Sergeant Fried was alleged to have failed to: provide an individual stopped during an investigative traffic stop with a citizen contact receipt before he left the scene, to obtain a central complaint number; and, to document the stop properly. The DRC met to review the OPR findings and consider a discipline recommendation on 17 October 2018. The commissioner's designee signed-off on final charges and discipline on 13 November 2018.

The BPD received a complaint regarding Sergeant Steve Histon and Officer Jonathan Boyer on 27 September 2017. Officer Boyer was alleged to have failed to write a report or take proper enforcement action after stopping four suspects, i.e., recovering the cell phone of an alleged robbery victim. Sergeant Histon was alleged to have failed to ensure Officer Boyer documented the alleged robbery properly and otherwise failing to supervise his units. The DRC met to review the OPR findings and consider a discipline recommendation on 26 September 2018. The commissioner's designee signed-off on final charges and discipline on 4 October 2018.

The BPD received a complaint regarding Officer Norman Jones on 10 November 2017. Officer Jones was alleged to have acted disrespectfully toward staff and failed to follow a direct order and to write an administrative report explaining why he was missing equipment and in possession of malfunctioning equipment at an annual Taser

7

recertification class.  The DRC met to review the OPR findings and consider a discipline recommendation on 9 November 2018.  The commissioner's designee signed-off on final charges and discipline on 13 November 2018.

The BPD received a complaint regarding Sergeant Denishia Jordan on 18 December 2017.  Sergeant Jordan was alleged to have been "disrespectful, insubordinate, and/or aggressive towards" her captain.  The DRC met to review the OPR findings and consider a discipline recommendation on 13 December 2018.  The commissioner's designee signed-off on final charges and discipline on 4 January 2019.

The BPD received a complaint regarding Officer Latasha McBride on 12 October 2017.  Officer McBride was alleged to have challenged the authority of a commanding officer and to have laughed at an instruction provided by the same officer.  The DRC met to review the OPR findings and consider a discipline recommendation on 11 October 2018.  The commissioner's designee signed-off on final charges and discipline on 16 October 2018.

The BPD received a complaint regarding Officers Raul Rivera and Ryan Oliver on 16 December 2017.  Officer Oliver was alleged to have failed to write a report on an assault incident.  Officer Rivera was alleged to have failed to ensure that Officer Oliver wrote the report.  The DRC met to review the OPR findings and consider a discipline recommendation on 13 December 2018.  The commissioner's designee signed-off on final charges and discipline for Officer Oliver on 4 January 2019 and for Officer Rivera on 7 January 2019.

The BPD received a complaint regarding Officer Richard Whittaker on 6 January 2018. Officer Whittaker was alleged to have been inebriated and in possession at the time of his approved and loaded off-duty weapon. The DRC met to review the OPR findings and consider a discipline recommendation on 3 January 2019. The commissioner's designee signed-off on final charges and discipline on 7 January 2019.

The BPD received a complaint regarding Sergeant Larry Worsley on 22 December 2017. Sergeant Worsley was alleged to have harassed another officer over a ten-month period, challenged the same officer to a fist fight, and intimidated the officer such that he began to fear for his life. The DRC met to review the OPR findings and consider a discipline recommendation on 21 December 2018. The commissioner's designee signed-off on final charges and discipline on 4 January 2019.

The BPD received a complaint regarding Officers Kent Sowers, Eric Baublitz, and Isiah Smith on 18 January 2018. The Officers were alleged to have conducted an illegal search at an incorrect address when responding to an alarm call. Officers Sowers and Baublitz were alleged also to have deactivated their body cameras. The DRC met to review the OPR findings and consider a discipline recommendation on 16 January 2019. The commissioner's designee signed-off on final charges and discipline on 29 January 2019.

Each officer filed a petition for a show cause order from the Circuit Court of Baltimore City, alleging the BPD failed to file the charges timely, pursuant to Md. Code, Pub. Safety § 3-106(a). The circuit court held a hearing 14 June 2019. The judge determined that the BPD failed to satisfy the one-year limitation period. Although praising generally the BPD's procedure for handling charges against officers, the hearing judge

9

noted that a definition for what it means to "file" the charges under § 3-106(a) was never established, e.g., Policy 308 did not state "whether filing occurs upon signing or not signing [the departmental approved form] or oral approval or not oral approval [at the closed DRC meeting]." The court determined that the BPD was not due judicial deference to its Policy in this regard because it "does not give a definition parallel to the statute such that [the trial court] would have to decide whether the Police Department's adopted definition is consistent with the statute and the General Assembly's intent or not."

Ultimately, the court concluded that the language of the statute "require[d] some measure of formality" in departmental action evincing the filing of charges. Although that "formality [is] not [the] equivalent of a court filing where there's a clerk's office charged with maintaining records," there must be a "way that that step in the process of approving charges can be examined and scrutinized by the court" because the "statute provides remedies for the officer to come to court . . . to challenge whether the charges have been brought timely or not." Although "a signature is not necessarily required," a signature is, according to the court, "what the Department has adopted" through its practice of having the commissioner's designee and a DRC member (on behalf of the DRC) sign and date their respective approvals of the final charging document:

> The charges that [the BPD] issues give places for the signatures and the date on which signed, which suggests that the Department treats the approval as being when it is signed.

As the commissioner's designee's signature was affixed after the one-year limitation period expired, the court dismissed all charges against the officers.

10

## III.  QUESTION PRESENTED

Appellant frames one question for our consideration, which we have rephrased non-substantively:

> I.  Did the circuit court err in its determination that the charges against appellees/officers were not filed timely within the one-year statutory limitation as required by Md. Code, Pub. Safety § 3-106(a) when the police commissioner's designee approved the discipline prior to exhaustion of the one-year period but failed to sign the charging documents until after exhaustion?

## IV.  RELEVANT GENERAL STANDARDS OF REVIEW

When reviewing an action tried without a jury, we review the judgment of the trial court "on both the law and evidence." *Banks v. Pusey*, 393 Md. 688, 697 (2006).  We defer to the circuit court's findings of fact, except where "the judgment of the trial court on the evidence [is] clearly erroneous."  Md. Rule 8-131(c).  Despite the deference given to its findings of fact, legal analysis by a trial court receives no deference.  *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.*, 378 Md. 337, 342–43 (2003).  In that vein, "[s]tautory construction is a legal question," which we review using a non-deferential standard.  *Miller v. Mathias*, 428 Md. 419, 450 (2012).

## V.  DISCUSSION

The BPD argues that it, through its adherence to Policy 308, complied with Md. Code, Pub. Safety § 3-106(a) and filed the charges within one year of when it was put on notice of alleged misconduct.  As there was no regulatory definition to determine what constituted filing of charges in the Policy, the BPD claims it complied with the statute by

11

the act of the commissioner's designee approving verbally the proposed charges and discipline at the DRC meetings. As this argument continues, although a form document calling explicitly for a signature and date of signing of the charges contemporaneous with or following the DRC meeting was a part of departmental practice, signing of the form document was not significant for purposes of determining when filing occurs as it was nothing more than a form of proof of the earlier verbal approval by the commissioner's designee, rather than the approval in and of itself. The filing occurs when the designee approves verbally at the DRC meeting the recommended discipline because the final step in Policy 308, before presenting charges to the officer, is titled "Presentation of Disciplinary Recommendation." The BPD claims also that its interpretation of what it means to file the charges is due deference from a reviewing court.

Appellees do not dispute a number of the claims about the LEOBR made by the BPD. In particular, Appellees agree that the declination by the Legislature to define "files the charges" leaves open the interpretation and implementation of the requirement by the local police through adoption of local policies and practices. The officers note, however, that some formal indicia—whether it be in the form of a signature, stamp, or other means— is required to evince the final act of the filing of charges. Further, the officers claim that, although the BPD claims that it adopted an interpretation that the charges are filed upon verbal acceptance by the commissioner's designee at the DRC meeting, the departmental practice belies that position because the charges are not final, i.e., not filed, until the designee signs-off on the charging document. In signing the charging document the designee provided a proper indicia of formality required by the word "filing." The officers

12

also disagree with the BPD's claim that its interpretation of the phrase should be given any deference as Policy 308 does not provide a definition of what represents filing the charges. We shall agree with the circuit court and the officers and affirm the judgment of the circuit court.

When considering ambiguous statutory language, we construe the ambiguous words "as having their ordinary and commonly-accepted meaning." *Waters Landing Ltd. P'ship v. Montgomery County*, 337 Md. 15, 27–28 (1994). We are bound as well to give the words "the contextual meaning most probably intended by the Legislature." *Deibler v. State*, 365 Md. 185, 195 (2001). Framed another way, we must use "common sense to avoid illogical or unreasonable constructions," *Armstead v. State*, 342 Md. 38, 56 (1996), and "may not extend statutes to make them say what the legislature, by choice or oversight, did not say." *Dep't of Nat. Res. v. Adams*, 37 Md. App. 165, 173 (1977). "Even if the plain language of the statute is clear and unambiguous, we may use extraneous interpretive aids, such as legislative purpose, history, and context to confirm our interpretation." *Prince George's County Police Dept. v. Zarragoitia*, 139 Md. App. 168, 180 (2001) (citing *Smith v. State*, 115 Md. App. 614, 621 (1997)).

In determining what the ordinary and commonly accepted meaning of a phrase or word is (whether engaged in plain meaning or ambiguity analysis), we often consult an appropriate dictionary for guidance, without losing sight of the context provided by the statute and the Legislature. *See State Dep't of Assessments & Taxation v. Md.-Nat'l Capital Park & Planning Comm'n*, 348 Md. 2, 14 (1997) ("[I]n deciding what a term's ordinary and natural meaning is, we may, and often do, consult the dictionary"). *But see*

13

*Friends of Frederick County v. Town of New Mkt.*, 224 Md. App. 185, 202 (2015)

("Recourse solely to a dictionary is not the only way, nor indeed usually the best way, by

which a court can discern legislative intent . . . rather [courts] consider it within the context

of the statutory scheme").

To keep it foremost in our minds in this analysis, we reiterate that Md. Code, Pub.

Safety § 3-106(a) provides in totality that:

> Subject to subsection (b)[11] of this section, a law enforcement agency may
> not bring administrative charges against a law enforcement officer unless
> the agency files the charges within 1 year after the act that gives rise to
> the charges comes to the attention of the appropriate law enforcement
> agency official.

The particular context of § 3-106(a) in LEOBR offers little to no help in discerning what

the Legislature meant by "filing."

Looking to the legislative history, we find some guidance regarding the purpose of

the Statute. In enacting the pertinent bill, the Senate Judiciary Committee report explained

that:

> Current law does not provide a time limit for the filing of administrative
> charges against a law enforcement officer under the Law Enforcement
> Officers' Bill of Rights.
>
> Testimony indicated that there have been many instances where a law
> enforcement officer who has committed a minor infraction has had that minor
> infraction held over his head for an extended period of time, resulting in
> significant uncertainty as to when, or even if, any disciplinary action is to be
> taken. The types of minor infractions referred to in this bill include
> administrative offenses such as improper wearing of a uniform, or not
> completing or signing a gasoline trip ticket. It is unfair, unreasonable, and

---

[11] Subsection (b) excuses the one-year limitation period in cases of criminal activity or use
of excessive force matters. None of the charges against Appellees involved either category.

serves no useful purpose to allow a supervisor to withhold the filing of such administrative charges indefinitely.

At some point, supervisory officials should be required either to file the administrative charge against the officer or to drop the charge so that the officer is relieved of the anxiety and concern that results from not knowing if or when the charges will be officially brought against the officer.

Floor Report of the Senate Judiciary Committee for Senate Bill, at page 1–2 (1988). We discern from this language that, in order to deem charges filed, officers were to have some protection against the threat of a charge or charges being dangled indefinitely over their heads.

Black's Law Dictionary defines "filed" as meaning when a paper is "delivered to the proper officer, and by him received to be kept on file as a matter of record and reference." The BPD notes that this Court addressed the definition of "filed" previously, having recourse to Black's in the process. In *Wilson v. Baltimore Police Department*, we held that charges were not filed, within the meaning of Md. Code Art. 27 § 730(b)(1) (the predecessor to current § 3-106(a)),[12] when they were served upon an officer, but rather "when charges against a police officer recommending disciplinary actions are presented to and approved by one authorized to initiate formal proceedings against the officer. At that point, the charges against the officer become a matter of record, subject to adjudication."

---

[12] Section 730(b)(1) stated that: "administrative charges may not be brought against a law enforcement officer unless filed within 1 year after the act that gives rise to the charges comes to the attention of the appropriate law enforcement agency official."

The Revisor's Note for Md. Code, Pub. Safety § 3-106 clarifies that it contains "new language derived without substantive change from former Art. 27, §730(b). Subsection (a) of this section was revised to reflect the active voice to clarify that a law enforcement agency files administrative charges against a law enforcement officer."

91 Md. App. 436, 438–39 (1992), *cert. denied*, 327 Md. 525 (1992). In reaching that conclusion, we took into account the Black's Law Dictionary definition and noted further that the words "file" or "files" "is used loosely to denote official custody of the court or the place in the offices of a court where the records and papers are kept." On the record in *Wilson*, we concluded that the charges were filed when the Deputy Commissioner of Police signed-off on the charges against the officer.[13]

The relevant language of the LEOBR came under scrutiny next by this Court in *Prince George's County Police Department v. Zarragoitia*. 139 Md. App. 168 (2001). In *Zarragoitia*, the Court was tasked with considering what constituted an administrative charge under the LEOBR. *Id.* The Prince George's County Police Department argued that its practice was to treat a document known as a "Report of Investigation" or "ROI" as the official charging document for filing purposes, despite the fact that the ROI did not provide exact language regarding the charges or references to what the charges were based on, and there was additional review mandated by the department's written policy following signing off on the ROI. We held that an "administrative charge . . . is a formal accusation of misconduct that evidences a decision by the agency to proceed against the law enforcement officer and marks the beginning of the adjudicatory phase of the proceeding." *Id.* at 184.

---

[13] Although a signature was deemed the time of filing in *Wilson*, we hasten to observe that that may not always be the case statewide. Determining when charges are filed under § 3-106(a) is a fact-driven analysis that hinges on the particular police department's policy and practice in handling disciplinary charges. The Legislature did not intend to make a signature on a specific document as a requirement for the time of filing across all police departments. Based on the record in *Wilson*, however, that was the determinative act of filing based on the department's policy and practice in place at the time.

We noted that signing a document that was little more than a non-binding proposal to charge did not qualify as filing charges under the LEOBR as the document did not rise to the level of "charges." To conclude otherwise would be improper as it was antithetical to the legislative purpose of adding the one-year limitation period to the LEOBR. The limitation period, added in 1988 as Section § 730(b)(1) of the LEOBR, "was enacted because '[i]t is unfair, unreasonable, and serves no useful purpose to allow a supervisor to withhold the filing of such administrative charges indefinitely.'" *Id.* at 186–87 (quoting Floor Report for the Senate Judiciary Committee for Senate Bill 623, at 1). If the Department's practice was valid, "the Department would give itself an indefinite, unlimited period of time in which to file charges. During that indefinite and unlimited period, the officer would have no information about the proposed charges, no means to prepare a defense, and no way to force a matter to a conclusion." *Id.*

The BPD interprets these two cases as endorsing the notion that a filing occurs when there is no further review to be undertaken and the charges have been approved by the final supervisory person empowered to make the decision whether the final version of charges are acceptable, e.g., the commissioner's designee at the DRC meeting. As there was assertedly no change between the draft charges alleged to have been presented at the DRC meetings and the time the designees signed-off formally on the form document,[14] the BPD argues that it is appropriate that the final review occurs at the DRC meeting and thus charges are filed formally upon the designee's giving of his/her/their verbal approval. As

---

[14] A claim which cannot be verified on these records.

17

such, the BPD states that "[a] signature is nothing more than a handwritten name . . . simply one form of proof of the designees' approvals, not approvals in and of themselves. The approvals took place at the DRC meetings; the subsequent signatures merely evidenced those approvals." We reject this "rabbit-pulled-from-a-hat" position on the records before us.

The record establishes that the full procedural panoply employed by the BPD in disciplinary cases is not to consider the charges filed and final until the signing and dating of the form document accompanying the final written statement of charges, regardless of whether the final charges are unchanged as allegedly approved verbally at the DRC meeting or have been revised or amended following the DRC meeting and before submittal to the commissioner's designee for his/her signature.

At the circuit court hearing, counsel for the BPD conceded that, although she did not believe a signature was required necessarily, the Maryland Office of Administrative Hearings ("OAH"), to which an appeal is available to a disciplined officer, had never proceeded with a hearing based only on a charge approved at the DRC meeting, without the signature on the charging document by the commissioner's designee. As the circuit court stated, "a signature . . . is what the Department had adopted. The charges that it issues give places for the signatures and the date on which signed, which suggests that the Department treats the approval as being when it is signed." We agree with the circuit court and hold that the BPD observed a policy and practice that formal filing of charges comes upon the signature by the commissioner's designee on the form document accompanying the final version of the charging document and proposed discipline.

18

This holding is not inconsistent with BPD Policy 308. The policy does not provide a definition of when charges are considered filed. According to the flow chart incorporated in Policy 308, the relevant steps proceed from "Presentation of Disciplinary Recommendations"[15] to the officer's opportunity to accept or contest the proposed discipline contained in the charges. The BPD claims that the flow chart "makes clear that review by the DRC is the final step before a charge is presented to the officer . . . ." The lack of recognition in the policy of an otherwise formal practice occurring between the presentation of the recommendations to the commissioner's designee and the service of charges on the officers makes problematic the BPD's attempted reconciliation of what is explicit in Policy 308 and what occurs in practice. Although the two ranking officers designated as the commissioner's designee in these respective cases provided affidavits in this litigation stating (in conclusory fashion) that the charges are considered filed by the BPD after the designee's verbal approval at the DRC meetings, this conflicts with the BPD's actual practice of requiring a signature by the designee. As easily as appellate counsel for the BPD imagines a scenario where an OAH hearing could be held in the absence of the designee's signature on the charging document, she admitted that she knew of none ever held without that prerequisite act. This implies that the act of signing the charging documents carries weight even outside the police department. Under the administrative process followed by the BPD in these cases, nothing forecloses other rational hypotheticals, such as where draft charges (with or without amendments/revisions)

---

[15] This presentation is to the Police Commissioner or his/her designee presumably, but that is not explicit in Policy 308.

19

and proposed discipline are approved tentatively by the DRC (including a verbal acquiescence by the commissioner's designee), but new and relevant facts come to light in the intervening time between the DRC meeting and before the designee signs-off formally, or the DRC reopens its consideration for any reason, or the designee changes his/her mind about the framing of charges as submitted or the appropriate discipline, or the designee disagrees with the framing of revisions made in the draft charges subsequent to the DRC meeting (whether contemplated or not at the meeting).  Under any of these hypotheticals, none of which would be inconsistent with Policy 308 as written, the filing does not occur until the designee signs-off formally on the charging document form.

Were we to agree with the BPD and hold that Policy 308 establishes that the BPD considers charges filed upon the verbal acceptance of the DRC recommendations by the commissioner's designee at the DRC meeting, there would arise a foreseeable danger that the LEOBR sought to foreclose.  It is clear from the text of the statute and our prior relevant decisions that a level of formality is required for the filing of charges.  *See Wilson*, 91 Md. App. at 439 (holding that the triggering event is when formal proceedings are initiated and "the charges against the officer become a matter of record, subjection to adjudication"); *see also Zarragoitia*, 139 Md. App. at 184 (holding that a charge is a formal accusation that sets off the adjudicatory process).  If the charges were deemed filed upon verbal approval alone, the adjudicatory process would be without the level of formality necessary for proper review of the department's compliance with § 3-106(a) of the LEOBR. Moreover, adopting the BPD's view might deny charged officers with a timely opportunity to learn of possible violations of the one-year limitation period and contest the charges and

20

discipline meted-out to them. If, as on the records in the present cases, the only evidence of what occurred at the meeting and the weight it carries with regard to interpreting and applying § 3-106 are the after-the-fact litigation affidavits provided by the commissioner's designees, then there is no fair avenue for a contesting officer to challenge violations of § 3-106(a). That is contrary to the intent of the legislation as it is framed presently.[16]

As we noted in *Zarragoitia*, a legislative purpose behind § 3-106 is to ensure that officers do not have the potential of administrative charges hanging-over them indefinitely. As shown by this record, time passed after the DRC meetings before the signature of the commissioner's designee was placed on the form accompanying the final charging document provided the officer. Although actual notice to the officer, as explained in *Wilson*, is not necessary for charges to be filed, Policy 308, as read by the BPD, does not require any formal action that would put the officer on notice of the date of the act that charges had been approved finally. "During that [possible] indefinite and unlimited period [that could follow the DRC verbal action], the officer would have no information about the proposed charges, no means to prepare a defense, and no way to force a matter to a conclusion," but for the date of signing by the commissioner's designee on the final version of the charging document. *Zarragoitia*, 139 Md. App. at 186–87.

The BPD advances one final argument. Its interpretation of the statutory language "files the charges" is entitled to deference by the courts. Indeed, "an administrative

---

[16] If the Legislature thinks our position off-the-mark regarding a statutory interpretation question, it knows how to express its contrary will prospectively (or, in certain circumstances, retrospectively).

agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts," unless it is "based upon errors of law." *Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 121 (2002). The level of deference we provide an administrative agency's interpretation of a statute, however, "depends on several factors," including "the duration and consistency of the administrative practice" and "the degree to which the agency's construction was made known to the public." *Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 445 (1997). Policy 308 was published on 13 September 2017. The LEOBR was passed in its original form by the Maryland Legislature in 1974 and the one-year limitation period in § 3-106 was added in 1988. The BPD's interpretation of its written Policy attracts less deference here than it would were the record to demonstrate that it was the longstanding policy or practice of the Department.

Further, the BPD's interpretation of the Policy does not appear explicitly or by strong implication in its text. "Another important consideration is the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation of the statute. When an agency clearly demonstrates that it . . . reached its interpretation through a sound reasoning process, the agency's interpretation will be accorded the persuasiveness due a well-considered opinion of an expert body." *Baltimore Gas and Elec. Co. v. Public Service Comm'n of Maryland*, 305 Md. 145, 161–62 (1986). Additionally, "if the interpretation is the product of neither contested adversarial proceedings nor formal rule promulgation, it is entitled to little weight." *Id.* at 162. For all that these records reveal, the Department's interpretation is made apparent solely in the litigation affidavits prepared

22

by the commissioner's designees in these cases. Those affidavits are all dated 26 April 2019. The conclusory assertions in the affidavits relative to the Department's interpretation state starkly only that: "[t]hrough my approval of the disciplinary recommendation . . . the disciplinary charges . . . were deemed formally filed." From this record, no assessment is possible as to the longevity or consistency over time of that interpretation as a departmental position, nor is the presence of a sound reasoning process determinable. We think the deference due in these cases is on the very low end of the spectrum.

Despite this minimal deference, the BPD requests that we extend still to its interpretation, e.g., that charges are filed when verbally approved at the DRC meeting, enough deference to allow its view safe passage. When presented this argument, the circuit court determined, nonetheless, that the BPD's interpretation was based on an error of law. The judge explained that:

> [Policy 308] certainly lays out a very orderly process for considering and approving charges, but it never defines one way or the other whether filing occurs upon signing or not signing or oral approval or not oral approval . . . it does not give a definition parallel to the statute such that I would have to decide whether the Police Department's adopted definition is consistent with the statute and the General Assembly's or not.
>
> So I don't see this as a situation where substantial deference is due to the Police Department for how it has defined an action relating to a statutory requirement.

The circuit court continued that, as Policy 308 did not define what it meant to file charges, the proper course of action is to look at the actual practice followed by the BPD in these cases. We agree with the circuit court.

23

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0979s19cn.pdf