*Mahdi Shabazz v. State of Maryland Department of Public Safety, et al.*, No. 1989 September Term, 2022. Opinion by Wright, Alexander, Jr.

**CONSTITUTIONAL LAW – EX POST FACTO PROHIBITIONS – PARTICULAR ISSUES AND APPLICATIONS – SEX OFFENDERS – REGISTRATION**

Trial court did not err in finding that the Maryland Department of Public Safety and Correctional Services (the "Department") and two of its employees (collectively "Appellees") had not violated § 11-701, *et seq.* of the Criminal Procedure Article ("CP") of the Maryland Code in requiring Mahdi Shabazz, a Maryland resident, to register as a sex offender in Maryland based on his conviction of misdemeanor sex abuse in the Superior Court of the District of Columbia. At the time of Shabazz's conviction, Maryland law required registration for all "Tier I sex offenders." The statute defined Tier I sex offenders to include "a person who has been convicted of . . . a crime committed in a federal, military, tribal, or other jurisdiction that, if committed in this State, would constitute [a violation of § 3-308 of the Criminal Law Article ("CR") of the Maryland Code.]" CP § 11-701(o)(3) (effective October 1, 2010). CR § 3-308(b)(1) prohibited "sexual contact with another without the consent of the other," and CR § 3-301 defined "sexual contact" to include the intentional touching of another's intimate area for sexual arousal or gratification, or for the abuse of either party. CR § 3-301(f). On December 10, 2010, Shabazz was convicted in Washington, D.C. of misdemeanor sex abuse after he bit a female bank employee on the breast. That act, had it been committed in Maryland, would have constituted a violation of CR § 3-308. Thus, Shabazz was required to register in Maryland as a Tier I sex offender.

**TORTS – PRIVACY AND PUBLICITY – PRIVACY – PUBLICATIONS OR COMMUNICATIONS IN GENERAL – FALSE LIGHT**

Trial court did not err in entering judgment in favor of Appellees on Shabazz's claim of invasion of privacy, in which Shabazz had alleged that Appellees had committed the tort by wrongly displaying his information on the sex-offender registration website and by distributing flyers to his neighbors about his status as a sex offender. Shabazz presented no evidence that Appellees were responsible for creating or distributing the flyers to his neighbors regarding his status as a sex offender. As to the displaying of his information on the sex-offender registration website, Shabazz failed to establish that that information was false given that, at all times relevant, Shabazz was a sex-offender registrant. Moreover, even if the information was "false," there was no evidence that Appellees had knowledge of or acted in reckless disregard to the falsity of the information.

**PLEADING – RESPONSES OR RESPONSIVE PLEADINGS IN GENERAL – DEFENSES IN GENERAL – NECESSITY FOR DEFENSE**

**PLEADING – AMENDED AND SUPPLEMENTAL PLEADINGS AND REPLEADER – LEAVE OF COURT TO AMEND**

Trial court did not abuse its discretion in denying Appellees leave to amend their original answer to add the defense of *res judicata*, which was not included in Appellees' original answer. The court found that permitting the amendment would have prejudiced Shabazz given that the amended pleading was filed at such a late stage – after the close of discovery – and introduced a significant defense that had not previously been raised. The court also found that Appellees had been given ample time to raise the defense and had failed to provide a viable reason why the defense was not raised sooner. Under those circumstances, the court did not abuse its discretion in denying Appellees leave to amend and striking their amended answer. And, because Appellees' original answer did not set forth the affirmative defense of *res judicata*, that defense was waived. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 527 (2004).

**LIMITATION OF ACTIONS – COMPUTATION OF PERIOD OF LIMITATION – ACCRUAL OF RIGHT OF ACTION OR DEFENSE – TORTS – CONTINUING INJURY IN GENERAL**

Shabazz's civil claims, all of which were based on Shabazz's placement on the Maryland sex offender registry on December 28, 2010, were not barred by Maryland's general three-year statute of limitations, despite the fact that Shabazz did not file his claims until July 18, 2019. When a plaintiff suffers a "continuing harm," that is, when a defendant is accused of committing an ongoing tort, "every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 646 (2013) (quotation marks and citation omitted). In Shabazz's case, although the "harm" began in December 2010, the harm did not abate until, at the earliest, August 24, 2016, when the Department informed Shabazz that he was no longer required to register as a sex offender. Thus, under the continuing harm doctrine, the statute of limitations did not begin to run until August 24, 2016. And, because Shabazz filed the instant complaint on July 18, 2019, his claim was not barred by the three-year statute of limitations.

**NEGLIGENCE – HEIGHTENED DEGREES OF NEGLIGENCE – GROSS NEGLIGENCE**

Trial court erred in granting judgment against the Department on Shabazz's claim of gross negligence. Although Shabazz presented evidence suggesting that the Department may have erroneously required him to register as a sex offender in Maryland, Shabazz presented no evidence suggesting that the Department intentionally failed to perform its duty or acted wantonly and willfully in utter indifference to the rights of others.

Circuit Court for Montgomery County
Case No. 469635V

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1989

September Term, 2022

———————————————————

MAHDI SHABAZZ

v.

STATE OF MARYLAND DEPARTMENT OF
PUBLIC SAFETY, ET AL.

———————————————————

Nazarian,
Leahy,
Wright, Alexander, Jr.
  (Senior Judge, Specially Assigned),

JJ.

———————————————————

Opinion by Wright, J.

———————————————————

Filed: April 18, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

*Tang, Rosalyn, J., did not participate in the
Court's decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

In December 2010, Mahdi Shabazz, Appellant, was convicted, in the Superior Court of the District of Columbia, of misdemeanor sex abuse based on allegations that, in May 2010, he bit a female bank employee on the breast while visiting her place of employment. That act, had it been committed in Maryland, would have constituted a fourth-degree sexual offense in violation of § 3-308 of the Criminal Law Article ("CR") of the Maryland Code. Shortly after his conviction, Shabazz, a Maryland resident, began registering as a sex offender in Maryland pursuant to § 11-701, *et seq.* of the Criminal Procedure Article ("CP") of the Maryland Code. Under that law, which became effective after Shabazz committed the D.C. offense but before he was convicted, individuals convicted of a crime in another jurisdiction that, if committed in Maryland, would constitute a violation of CR § 3-308 were required to register as a sex offender in Maryland. CP § 11-701(o)(3) (2010).

Over the next several years, Shabazz engaged in a campaign to have his name removed from the registry. In 2016, the Maryland Department of Public Safety and Correctional Services (the "Department") informed Shabazz that he was no longer required to register.

In 2019, Shabazz filed, in the Circuit Court for Montgomery County, a civil complaint against the Department and two State employees (collectively "Appellees") alleging, among other things, that requiring him to register as a sex offender in Maryland constituted a violation of CP § 11-701, a violation of the prohibition on *ex post facto* laws in Article 17 of the Maryland Declaration of Rights, gross negligence, and invasion of privacy (false light). In 2022, following a bench trial, the court issued the following rulings: 1) on Shabazz's claim of a violation of CP § 11-701, the court entered judgment

in favor of Appellees; 2) on Shabazz's claim of a violation of Article 17, the court entered judgment in favor of Shabazz against the Department; 3) on Shabazz's claim of gross negligence, the court entered judgment in favor of Shabazz against the Department; 4) on Shabazz's claim of invasion of privacy, the court entered judgment in favor of Appellees; and 5) for damages, the court ordered the Department to pay Shabazz $400,000.00.

Shabazz thereafter noted an appeal, and Appellees noted a cross-appeal.  In his appeal, Shabazz presents two questions, which we have rephrased for clarity:

1.  Did the trial court err in finding that Appellees had not violated CP § 11-701?

2.  Did the trial court err in entering judgment in favor of Appellees on Shabazz's claim of invasion of privacy?

In their cross-appeal, Appellees present three questions, which we have rephrased for clarity:

1.  Were Shabazz's claims barred by *res judicata* and the applicable statute of limitations?

2.  Did the trial court err in entering judgment against the Department on Shabazz's gross negligence claim?

3.  Was the trial court's award for damages excessive and unsupported by the evidence?

As to Shabazz's two questions, we hold that the trial court did not err.  As to Appellees' first question, we hold that their *res judicata* argument was waived and that their statute of limitations argument is without merit.  As to Appellees' second question, we hold that the court erred in entering judgment in favor of Shabazz.  We therefore reverse that portion of the court's judgment, along with its damages award, and remand the case

2

for further proceedings consistent with this opinion. Because we reverse, we need not address Appellees' third question. Otherwise, we affirm.

## BACKGROUND

### *Relevant Law*

In 1994, the United States Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (the "Wetterling Act"), which established guidelines for registering sex offenders. Pub. L. No. 103-322, 108 Stat. 1796 (1994). Under the Act, a person convicted of certain sexually-based offenses would be required to register with a local law enforcement agency for up to ten years. *Id.* The Act required each state to establish its own program for registering sex offenders that was consistent with the Act's guidelines. *Id.* Failure to comply with the Act would result in the state losing certain federal funding. *Id.*

In 1995, in response to the mandates of the Wetterling Act, the Maryland General Assembly enacted "The Maryland Crimes Against Children and Sexual Offender Registration Law." *Graves v. State*, 364 Md. 329, 336-37 (2001). That law required "child sexual offenders" to register with the appropriate authorities for a period of ten years. *Id.* at 337-38; *see also* Article 27, § 692B (1995). The law was later amended to include additional classifications of offenders who were required to register. *Graves*, 364 Md. at 338.

In 2006, Congress enacted the Sex Offender Registration and Notification Act ("SORNA"), which is now codified in Title 34, Chapter 209 of the United States Code. Pub. L. No. 109-248, 120 Stat. 587 (2006); *see also* 34 U.S.C. § 20901, *et seq.* SORNA

3

replaced the previous federal sex-offender registration laws and established a new, comprehensive national system for registering sex offenders. Pub. L. No. 109-248, 120 Stat. 587. Under the new law, sex offenders were categorized into "tiers" based on the severity of the offense. 34 U.S.C. §§ 20911, 20915. As with the previous sex-offender laws, states were required to establish a similar registration system or risk losing federal funding. 34 U.S.C. § 20927.

In May 2010, when the crime at issue in the instant case was committed, Maryland had yet to adopt the "tier" system of classification established by SORNA. Instead, the Maryland statute required registration for Maryland residents who had been convicted of crimes in another state that, if committed in Maryland, would categorize them as "child sexual offenders" or "offenders" under Maryland law. CP § 11-704(a) (effective October 1, 2009 to September 30, 2010). The statute defined "child sexual offender" to include a person who "has been convicted of violating the fourth degree sexual offense statute under § 3-308 of the Criminal Law Article for a crime involving a child under the age of 15 years and has been ordered by the court to register under this subtitle[.]" CP § 11-701(c)(3) (effective October 1, 2009 to September 30, 2010). The statute defined "offender" to include a person "who is ordered by a court to register under this subtitle and who . . . has been convicted of violating . . . the fourth degree sexual offense statute under § 3-308 of the Criminal Law Article, if the victim is under the age of 18 years[.]" CP § 11-701(h)(2) (effective October 1, 2009 to September 30, 2010). At the time, CR § 3-308 prohibited "sexual contact with another without the consent of the other[.]" CR § 3-308(b)(1) (2010). The statute defined "sexual contact" to include "an intentional touching of the victim's or

4

actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party." CR § 3-301(f)(1). The statute stated further that "'[s]exual contact' includes an act . . . that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party." CR § 3-301(f)(2).

As of October 1, 2010, the General Assembly amended CP § 11-701, *et seq.* and adopted the "tier" system of classification, as established by SORNA. 2010 Md. Laws ch. 174. The new law required registration for all "Tier I sex offenders," which were defined to include "a person who has been convicted of . . . conspiring to commit, attempting to commit, or committing a violation of § 3-308 of the Criminal Law Article[.]" CP § 11-701(o)(1) (effective October 1, 2010). The statute further defined Tier I sex offenders to include "a person who has been convicted of . . . a crime committed in a federal, military, tribal, or other jurisdiction that, if committed in this State, would constitute one of the crimes listed in item (1) or (2) of this subsection[.]" CP § 11-701(o)(3) (effective October 1, 2010). CR § 3-308 was not changed.

In addition to the above changes, the new sex-offender registration statute included a provision that required the law to be applied retroactively to any person who:

> (1) is under the custody or supervision of a supervising authority on October 1, 2010;
>
> (2) was subject to registration under this subtitle on September 30, 2010; or
>
> (3) is convicted of any crime on or after October 1, 2010, and has a prior conviction for an offense for which registration as a sex offender is required under this subtitle.

CP § 11-702.1(a) (effective October 1, 2010).

In 2013, our courts decided two seminal cases involving the 2010 revisions to Maryland's sex-offender registration statute. In *Doe v. Department of Public Safety and Correctional Services*, 430 Md. 535 (2013), the Supreme Court of Maryland considered whether the sex-offender registration law violated the *ex post facto* provision of Article 17 of the Maryland Declaration of Rights. There, the petitioner was convicted in 2006 of child sexual abuse based on acts that occurred over twenty years earlier. *Id.* at 538-39. When the sex-offender registration law was amended in 2010, the petitioner was forced to register as a "Tier III" sex offender. *Id.* at 540-41. The petitioner subsequently challenged that requirement on appeal, and the Supreme Court of Maryland held that requiring the petitioner to register as a sex offender under the new law for acts that occurred prior to the law's enactment violated Article 17's *ex post facto* provision. *Id.* at 568.

Several months later, in *Sanchez v. State*, 215 Md. App. 42 (2013), this Court considered a similar issue. There, the defendant was convicted in 2002 of a fourth-degree sex offense after he engaged in unconsented sexual contact with someone who was over the age of 18. *Id.* at 45. Because the sex-offender registration law in effect at the time of the defendant's conviction only required registration for a fourth-degree sex offense when the victim was under the age of 18, the defendant was not required to register. *Id.* When the Maryland General Assembly changed the law in 2010 and adopted the "tier" system, the defendant was notified that he was now required to register as a sex offender. *Id.* at 45-46. The defendant later challenged that requirement on appeal, and this Court held that, under *Doe*, requiring the defendant to register under the new law for his 2002 conviction violated Article 17's *ex post facto* provision. *Id.* at 49-51.

***The Instant Case***

On May 20, 2010, Shabazz, a Maryland resident, went to a TD bank branch in Washington, D.C. to open an account. Upon completing the transaction, Shabazz approached a female bank employee and hugged her. When the employee backed away, Shabazz advanced, placed his arms around the employee, and kissed her about the face and neck. The employee then pushed Shabazz away, at which point Shabazz pulled the employee toward him and bit her atop her left breast. Shabazz was subsequently arrested and charged in the Superior Court of the District of Columbia with one count of misdemeanor sex abuse and simple assault. On December 10, 2010, following a bench trial, Shabazz was convicted on both counts.

Shortly thereafter, the Department informed Shabazz that, because his Washington, D.C. conviction was substantially similar to a violation of CR § 3-308, he was required to register as a Tier I sex offender under Maryland's newly enacted sex-offender registration law. Over the next several years, Shabazz sent various communications to the Department challenging the requirement that he register as a sex offender.

In May 2016, Shabazz filed a complaint for declaratory relief in the circuit court. In that complaint, Shabazz argued that he should not have been required to register as a Tier I sex offender because that version of the statute did not become effective until October 1, 2010, several months after he committed the act that served as the basis for his Washington, D.C. conviction. He argued, therefore, that requiring him to register under the new law violated Article 17's *ex post facto* provision.

On August 24, 2016, prior to the resolution of Shabazz's declaratory action, the Department sent Shabazz a letter indicating that he was no longer required to register as a sex offender in Maryland. The Department stated that Shabazz did not meet the criteria for registration because he "did not meet the residency requirements at the time of the offense." The Department stated further that Shabazz's registration information had been removed from "the website and all associated databases."

On July 18, 2019, Shabazz filed a civil complaint against the Department and two State employees: Elizabeth Bartholomew, the former manager of Maryland's sex-offender registry, and Carole Shelton, the former director of Maryland's central depository service (collectively "Appellees").[1] In that complaint, Shabazz set forth several counts, four of which are relevant here.

In Count One, Shabazz claimed that Appellees violated CP § 11-701 by requiring him to register as a sex offender. He argued that Washington, D.C. did not qualify as a "jurisdiction" within the meaning of the statute.

In Count Two, Shabazz claimed that Appellees violated Article 17 of the Maryland Declaration of Rights by forcing him to register as a sex offender. He argued that, because the acts that served as the basis for his Washington, D.C. conviction were committed before the effective date of the 2010 sex-offender registration law, requiring him to register pursuant to that law was, under *Doe*, a violation of Article 17's *ex post facto* provision.

---

[1] There were other named defendants, none of whom is a party to the instant case.

8

In Count Three, Shabazz claimed that Appellees' actions constituted gross negligence. He argued that Appellees should have removed his name from the registry immediately following the *Doe* decision. He argued that Appellees were grossly negligent in keeping his name on the sex-offender registry for an additional three years.

Finally, in Count Six, Shabazz claimed that Appellees committed the tort of invasion of privacy (false light). He argued that Appellees committed that tort by keeping his name on the sex-offender registry and publishing that information to the public. He also argued that Appellees were liable for the actions of a Montgomery County Police officer who handed out flyers to Shabazz's neighbors informing them that Shabazz was a registered sex offender.

### Bench Trial

At the bench trial that followed, Shabazz presented several witnesses in his case-in-chief. Elizabeth Bartholomew testified that she was the former manager of Maryland's sex-offender registry and that her job included reviewing and responding to requests by individual registrant's who wished to be removed from the registry. Ms. Bartholomew testified that she was familiar with the *Doe* decision and that, when the decision was issued in 2013, she did not think it applied in Shabazz's case.

Carole Shelton testified that she was the former director of the central depository service and that part of her responsibilities included overseeing the sex-offender registry. Ms. Shelton stated that she was aware that Shabazz had sent various communications to the Department indicating that he objected to his being placed on the registry. Ms. Shelton

9

testified that those communications were considered by her unit, that her unit "met extensively" to review his case, and that she consulted with the Department's legal counsel.

Shabazz testified that, beginning shortly after he was placed on the registry in 2010, he sent several communications to the Department contesting his status as a registrant. Shabazz testified that, as a result of his being placed on the registry, he lost custody of his son, lost his job, and was unable to gain employment.

Jerome Paige, a former government employee with a background in economics, testified that he had been involved in preparing an "economic damages report" regarding Shabazz's case and that he had been "asked to estimate the costs of earnings and the loss of fringe benefits due to the allegations in this particular matter." According to Mr. Paige, it was determined that Shabazz had suffered over $1 million in lost earnings.

In Appellees' case-in-chief, David Wolinski, the former assistant director for the Criminal Justice Information System, testified that he supervised Ms. Bartholomew for five years while she was the manager of the sex-offender registry. Mr. Wolinski testified that it was "a very difficult job" because, in part, the law and the registration requirements were constantly changing. Mr. Wolinksi testified that Ms. Bartholomew was an excellent employee and that she performed her job with due diligence.

Carole Shelton testified that she first became aware of Shabazz's case after receiving a letter from him concerning his registration. Ms. Shelton testified that she received additional letters and that, for each letter, an investigation was conducted into Shabazz's case. Ms. Shelton testified that, every time they reviewed Shabazz's case, "there

was no change that we could make." Ms. Shelton testified that Shabazz was ultimately removed from the registry in 2016.

Elizabeth Bartholomew testified that, as the manager of the Maryland Sex Offender Registry in 2010, she was responsible for implementing the changes made by the Maryland General Assembly to the sex-offender registration laws that year. Ms. Bartholomew explained that Maryland's old registration system was out of compliance with the federal SORNA guidelines and that, as a result, Maryland was in danger of losing federal funding. Ms. Bartholomew noted that there was a lot of confusion surrounding the law, particularly with respect to how the changes should be implemented and who would be affected by those changes. Ms. Bartholomew explained that in 2014, after the *Doe* and *Sanchez* decisions were handed down, the Department began the process of removing certain offenders from the database. At the time, there were between 7,500 and 8,000 registrants, and Ms. Bartholomew, along with four staff members, were tasked with reviewing those cases and determining whether they should be removed. Ms. Bartholomew testified that, by 2017, they had removed around 3,196 people from the database.

Regarding Shabazz's case, Ms. Bartholomew testified that he was initially required to register because the 2010 law stated that, if an individual was convicted on or after October 1, 2010, of a crime in another state that would require registration in Maryland, then the individual was required to register in Maryland. Ms. Bartholomew explained that, following *Doe*, the Department reviewed thousands of cases, including out-of-state cases like Shabazz's. Ms. Bartholomew stated that the out-of-state cases were the hardest because it was difficult to get records and information from the various jurisdictions. Ms.

11

Bartholomew explained that they did not get to the out-of-state cases until 2016. Ms. Bartholomew testified that it was ultimately determined that Shabazz did not qualify for registration "based on all of these cases as they piled up."

### *Court's Ruling*

As to Shabazz's claim that Appellees violated CP § 11-701, the court found in favor of Appellees. The court noted that, when Shabazz committed the offense that led to his Washington, D.C. conviction, he would not have been required to register in Maryland because the victim was not under the age of 18. The court found that, when the law was changed on October 1, 2010, Shabazz was required to register because of the law's retroactivity provision.

As to Shabazz's claim that Appellees violated Article 17 of the Maryland Declaration of Rights, the court found in favor of Shabazz. The court found that requiring Shabazz to remain on the registry after 2013, that is, after *Doe* and *Sanchez*, was a violation of Article 17's *ex post facto* provision. The court also found that Appellees' stated reason for removing Shabazz from the registry – that he did not meet the residency requirements at the time of the offense – was "specious."

As to Shabazz's gross negligence claim, the court found in favor of Shabazz and against the Department:

> This Court is troubled by Ms. Bartholomew and Ms. Shelton's somewhat laissez faire attitude towards the impact and importance of their respective positions. There seems to be little appreciation of the impact of being on the Sex Offender Registry one day longer than necessary, much less years.

12

While the Court does not find that they acted with malice, there does appear to be a degree of indifference as to the consequences of their failure to act. The excuses of being overworked and understaffed are not acceptable explanations and are disheartening when it literally affects the lives of others.

* * *

The Department had no process or system in place to review the status of those on the Registry in light of legislative and appellate changes, changes that these defendants, and individuals, and officials in charge testified occurred yearly. The Department had a duty to act upon these annual changes and failed to do so in thoughtless disregard or indifference to the consequences of those affected. The differing letters generated by the Department as to the basis of Mr. Shabazz's removal from the Registry reflect this indifference.

The Court finds that the Department's failure to act, failure to implement any type of process to conduct reviews of those on this Registry affecting [sic] by these annual changes, and only taking action when served with a declaratory judgment action essentially requiring citizens to have to file a lawsuit against the Department for the Department to take action constitutes gross negligence.

The Court finds that the individual defendants, Carole Shelton and Elizabeth Bartholomew, were acting within the course and scope of their employment. The Court finds that they had no personal animus or malice towards Mr. Shabazz. Their actions on behalf of the state, as state employees, constitute gross negligence, which is attribute [sic] to the state and the Department.

As to Shabazz's claim of invasion of privacy, the court found in favor of Appellees. The court explained that the flyers labeling Shabazz as a sex offender were created and distributed by the Montgomery County Police Department, not Appellees. The court explained further that there was no evidence that the officer who distributed the flyers knew that the information was false.

Finally, as to damages, the court found that Shabazz was entitled to be compensated for the damages he had incurred as a result of Appellees' actions. The court credited

13

Shabazz's testimony regarding how he was affected, both personally and financially, by being on the registry. Based on that evidence, the court entered judgment against the Department in the amount of $400,000.00.

These timely appeals followed. Additional facts will be added below as needed.

## STANDARD OF REVIEW

"When reviewing an action tried without a jury, we review the judgment of the trial court 'on both the law and evidence.'" *Baltimore Police Dep't v. Brooks*, 247 Md. App. 193, 205 (2020) (quoting *Banks v. Pusey*, 393 Md. 688, 697 (2006)). We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and [we] will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule 8-131(c). Issues of law are reviewed *de novo*. *Brooks*, 247 Md. App. at 205.

## DISCUSSION – SHABAZZ'S APPEAL

### I.

Shabazz argues that the trial court erred in finding that Appellees did not violate CP § 11-701 in requiring him to register as a sex offender in Maryland based on his Washington, D.C. conviction. He raises three primary arguments: that his D.C. conviction would not have constituted a violation of CR § 3-308 within the meaning of CP § 11-701 because the victim was not a minor; that D.C. was not a "jurisdiction" within the meaning of CP § 11-701; and, that CP § 11-701 did not apply to him because the law's retroactivity provision specifically excluded him.

14

Appellees contend that none of Shabazz's arguments has merit. Appellees argue that Shabazz was obligated to register as a Tier I sex offender pursuant to the version of the statute that was in effect at the time of his conviction.

We hold that the court was correct in concluding that, at the time of his conviction, Shabazz was required to register in Maryland as a Tier I sex offender. As discussed above, the version of the statute at issue became effective on October 1, 2010, and the statute required registration for all "Tier I sex offenders." The statute defined Tier I sex offenders to include "a person who has been convicted of . . . a crime committed in a federal, military, tribal, or other jurisdiction that, if committed in this State, would constitute [a violation of CR § 3-308.]" CP § 11-701(o)(3) (effective October 1, 2010). At the time, CR § 3-308(b)(1) prohibited "sexual contact with another without the consent of the other," and CR § 3-301 defined "sexual contact" to include the intentional touching of another's intimate area for sexual arousal or gratification, or for the abuse of either party. CR § 3-301(f). On December 10, 2010, two months after CP § 11-701 was amended, Shabazz was convicted in Washington, D.C. of misdemeanor sex abuse after he bit a female bank employee on the breast. That act, had it been committed in Maryland, would have constituted a violation of CR § 3-308. Thus, Shabazz was required to register in Maryland as a Tier I sex offender.

As to Shabazz's arguments in support of his claim, we are not persuaded by any of those arguments. First, there is nothing in the plain language of the statute or in the statute's legislative history to indicate that the registration requirements for violations of CR § 3-308 were intended to be limited to convictions involving minors. In fact, the statute's

legislative history suggests the opposite. Prior to the 2010 amendment, CP § 11-701 required registration for "child sexual offenders" and "offenders," which were defined, respectively, to include a person convicted of violating CR § 3-308 involving a victim under the age of fifteen or eighteen. When the amended version of CP § 11-701 became effective on October 1, 2010, and adopted the "tier" system of classification, the condition regarding the victim's age was removed, and registration was required for any violation of CR § 3-308. In so doing, the General Assembly clearly signaled that the age of the victim was of no moment in determining whether a violation of CR § 3-308 triggered registration as a "Tier I sex offender."

We likewise reject Shabazz's claim that Washington, D.C. was not a "jurisdiction." CP § 11-701(g) defines jurisdiction as "a state or a Native American tribe that elects to function as a registration jurisdiction under federal law." At all times relevant, Washington, D.C. was a "registration jurisdiction." *See* D.C. Code Ann. § 22-4001, *et seq.*; *see also* 2006 District of Columbia Laws 13-306; 2000 District of Columbia Laws 13-137.

Finally, we find Shabazz's reliance on the law's retroactivity provision to be misplaced. The retroactivity provision was designed to bring all sex offenders within the purview of the law as enacted on October 1, 2010, even if the offender was convicted prior to the law's enactment. As discussed, Shabazz was convicted after the law was enacted, so the retroactivity provision would not apply to him. To the extent that Shabazz is claiming that the law should not have applied to him because the acts that served as the basis for his conviction occurred prior to the law's enactment, such an argument would go

16

toward his *ex post facto* claim and has nothing to do with whether the law, as written, applied to him.

## II.

Shabazz argues that the trial court erred in entering judgment in favor of Appellees on his claim of invasion of privacy (false light). Shabazz contends that Appellees committed the tort by displaying his information on the sex-offender registration website and by distributing flyers to his neighbors about his status as a sex offender. Appellees contend that the court correctly entered judgment in their favor.

The tort of false light invasion of privacy has been explained as follows:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Furman v. Sheppard*, 130 Md. App. 67, 77 (2000) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 513-14 (1995)).

We hold that the trial court did not err in entering judgment in favor of Appellees. As the court correctly found, Shabazz presented no evidence that Appellees were responsible for creating or distributing the flyers to his neighbors regarding his status as a sex offender. The court was well within its discretion in choosing to credit the evidence in support of Appellees' claim that they were not responsible for the flyers. *See Omayaka v. Omayaka*, 417 Md. 643, 659 (2011) (noting that a trial court, as the fact-finder, is "entitled

17

to accept – or reject – *all*, *part*, or *none* of the testimony of any witness, whether that testimony was or was not contradicted or corroborated by any other evidence").

As to the displaying of his information on the sex-offender registration website, Shabazz failed to establish that that information was false. *See Lindenmuth v. McCreer*, 233 Md. App. 343, 367 (2017) (noting that, to constitute the tort of false light invasion of privacy, the statement at issue must be false); *see also Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (noting that the plaintiff bears the burden of proving falsity). Shabazz was a sex-offender registrant up until he was removed in August 2016; thus, it cannot be said that Appellees placed Shabazz in a false light by informing the public that he was on the registry. *See Piscatelli*, 424 Md. at 306 (noting that a statement is false if it is "not substantially correct" (quotation marks and citation omitted)).

Assuming, *arguendo*, that Shabazz's status as a sex offender was, at some point, "false" and that Appellees' act of continuing to display that status to the public placed Shabazz in a false light, there was no evidence that Appellees "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Furman*, 130 Md. App. at 77 (quotation marks and citation omitted). Although Shabazz presented evidence establishing that he had engaged in some effort to have his name removed from the registry, Appellees presented evidence suggesting that they reasonably believed that Shabazz was required to register. Again, the court was well within its discretion in crediting Appellees' evidence in their favor.

18

## DISCUSSION – APPELLEES' CROSS-APPEAL

## I.

In their cross-appeal, Appellees argue, preliminarily, that all of Shabazz's claims were barred by *res judicata* and Maryland's general three-year statute of limitations for civil claims. As discussed in greater detail below, we reject both arguments.

## A.

Appellees' *res judicata* claim is based on two lawsuits Shabazz filed in the United States District Court for the District of Columbia, in which Shabazz raised virtually identical claims to the ones raised in the instant case. The first lawsuit was filed in 2017 and was voluntarily dismissed that same year. The second lawsuit was filed in 2019 and was voluntarily dismissed that same year. Appellees note that, under Federal Rule of Civil Procedure 41(a)(1), when a plaintiff voluntarily dismisses an action and then subsequently dismisses a second action based on the same claim, the second action must be dismissed with prejudice. Appellees argue, therefore, that the principle of *res judicata* precluded Shabazz from bringing the instant action.

Upon reviewing the record, it is clear that Appellees' argument was properly considered and rejected by the court. Shabazz filed the instant action in July 2019, and, in October 2020, Appellees filed their answer. Then, in June 2021, one day after the close of discovery, Appellees filed an amended answer in which they raised, for the first time, the *res judicata* issue. Shabazz subsequently filed a motion to strike the amended answer, arguing that both the answer and the *res judicata* claim were untimely. Following a hearing, the court granted Shabazz's motion. The court struck the amended answer because

Appellees had not sought leave to amend. The court found that Appellees had been given ample time to raise their *res judicata* claim and that introducing it at such a late stage of the proceedings would prejudice Shabazz. The court found that Appellees had not provided an adequate explanation for why the defense was not raised sooner.

The court did not abuse its discretion in its decision. *Res judicata* is an affirmative defense that must be raised in a party's answer. Md. Rule 2-323(g). Failure to do so "'bars the defendant from relying on the defense to obtain judgment in its favor.'" *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 527 (2004) (quoting *Gooch v. Maryland Mech. Sys., Inc.*, 81 Md. App. 376, 385 (1990)). Because Appellees did not raise the defense in their original answer, the defense was waived.

To be sure, a party may cure that defect by filing an amended answer and including the defense in the amended answer. *Samuels v. Tschechtelin*, 135 Md. App. 483, 542 (2000). Although a court should generally permit such an amendment, a court may deny the amendment if a plaintiff shows "prejudice, unfair surprise, or lack of fairness." *Id.* (quotation marks and citation omitted). "The decision whether 'to allow amendments to pleadings or to grant leave to amend pleadings is within the sound discretion of the trial judge,' and the decision in that regard will be reversed only on a showing of 'a clear abuse of discretion.'" *Norino Props., LLC v. Balsamo*, 253 Md. App. 226, 260-61 (2021) (quoting *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443-44 (2002)).

Here, the court did not permit Appellees to amend their pleading and add the affirmative defense of *res judicata*. The court found that permitting the amendment would have prejudiced Shabazz given that the amended pleading was filed at such a late stage –

20

after the close of discovery – and introduced a significant defense that had not previously been raised. The court noted that Appellees had been given ample time to raise the defense and had failed to provide a viable reason why the defense was not raised sooner. Given those considerations, we cannot say that the court abused its discretion in denying Appellees leave to amend and striking their amended answer. And, because Appellees' original answer did not set forth the affirmative defense of *res judicata*, that defense was waived.

### B.

Appellees' other argument is that Shabazz's claims were barred by Maryland's general three-year statute of limitations. Appellees contend that Shabazz's claim "accrued" on December 28, 2010, when he was first required to register in Maryland, and that, consequently, he had three years from that date to file the instant claim.

Appellees are mistaken. Indeed, a civil action ordinarily must be filed within three years from the date it accrues, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101, and an action is generally considered to have "accrued" when the wrong is discovered, which, in this case, would have occurred when Shabazz was first required to register. *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 716-17 (2003). But, when a plaintiff suffers a "continuing harm," that is, when a defendant is accused of committing an ongoing tort, "every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 646 (2013) (quotation marks and citation omitted). "Therefore, violations that are continuing in nature are not barred

21

by the statute of limitations merely because one or more of them occurred earlier in time." *Id.* (quotation marks and citation omitted).

Here, the "harm" was Shabazz's placement on the sex-offender registry, which began in December 2010. That harm did not abate until, at the earliest, August 24, 2016, when the Department informed Shabazz that he was no longer required to register. Thus, under the continuing harm doctrine, the statute of limitations did not begin to run until August 24, 2016, despite the fact that the harm was discovered well before that date. And, because Shabazz filed the instant complaint on July 18, 2019, his claim was not barred by the three-year statute of limitations.

That said, when a plaintiff relies on the continuing harm doctrine to toll the statute of limitations, "damages for such causes of action are limited to those occurring within the three year period prior to the filing of the action." *Id.* (quotation marks and citation omitted). Thus, any damages awarded to Shabazz must have been incurred within three years of the commencement of his action.

## II.

Appellees next argue that the trial court erred in entering judgment against the Department on Shabazz's gross negligence claim. Appellees contend that Shabazz failed to produce "any evidence that the Department acted with the kind of wanton, willful, or malicious conduct that would support a finding of gross negligence." Shabazz disagrees, arguing that the court had ample evidence from which to conclude that the Department was grossly negligent in requiring him to continue registering as a sex offender in Maryland for years despite his repeated efforts to have his name removed from the registry.

22

We agree with Appellees and hold that the court erred in finding that the Department was grossly negligent. "Ordinary, simple negligence is 'any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm.'" *Stracke v. Est. of Butler*, 465 Md. 407, 420 (2019) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). Gross negligence, on the other hand, is "something *more* than simple negligence, and likely more akin to reckless conduct[.]" *Barbre*, 402 Md. at 187 (quotation marks and citation omitted). "It is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 73 (2021) (quotation marks and citation omitted). "A wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Stracke*, 465 Md. at 421 (cleaned up). As such, the acts that serve as the basis for a gross negligence claim, "must be sufficient to establish that the defendant had a wanton or reckless disregard for human life[.]" *Id.* (cleaned up). "Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind." *Id.* (quotation marks and citations omitted).

Here, the trial court found that the Department was grossly negligent in requiring Shabazz to register as a sex offender. The court based that decision on the following findings: that Ms. Bartholomew and Ms. Shelton had a "laissez faire attitude towards the impact and importance of their respective positions"; that there appeared to be "a degree

23

of indifference as to the consequences of their failure to act"; that the Department "had no process or system in place to review the status of those on the Registry in light of legislative and appellate changes"; that the Department failed to act on those changes "in thoughtless disregard or indifference to the consequences of those affected"; and that the Department took action in Shabazz's case only "when served with a declaratory judgment action essentially requiring citizens to have to file a lawsuit against the Department for the Department to take action[.]"

Those findings do not support a claim of gross negligence. First, several of the court's findings are unsupported or belied by the record. Ms. Bartholomew testified that, following the *Doe* and *Sanchez* decisions, the Department implemented a plan to review the status of each registrant, approximately 8,000 in total, to determine if the changes in the law would affect the registrant's status. Ms. Bartholomew testified that that process had resulted in the removal of around 3,196 people from the database. Clearly, the Department had *some* process or system in place to review the status of those on the registry in light of legislative and appellate changes.

Moreover, there was absolutely no evidence that the Department, in implementing that process, acted in thoughtless disregard or indifference to the consequences of those affected. There was no evidence that Shabazz was kept on the registry intentionally or in utter indifference to his rights. In fact, there was no evidence that Shabazz's removal from the registry was delayed for any reason other than that the Department had thousands of cases to review and was understaffed. As discussed in greater detail above, the Department had a reasonable basis to believe that Shabazz was required to register in December 2010,

24

and it was reasonable for the Department to assume the legitimacy of that basis until several years later, when the *Doe* and *Sanchez* decisions were handed down. As Ms. Bartholomew explained, it was at that point that the Department began its review process, which involved considering not just the interests of the thousands of individuals on the registry, but also the competing interest of ensuring that the registry was being implemented in compliance with Maryland and federal law. That Shabazz's registration status languished while the Department reviewed other cases is not evidence of gross negligence. Nor is it evidence of gross negligence that Shabazz's removal from the registry coincided with his declaratory judgment action and was premised on the somewhat perplexing grounds that he did not meet the residency requirements for registration in Maryland. Although those acts, and the inferences drawn therefrom, may be evidence of negligence, they are not, without any evidence of deliberateness on the part of the Department, evidence of gross negligence. *See Stracke*, 465 Md. at 421-24 (explaining that gross negligence requires "a deliberate and conscious choice").

Beyond that, the record is devoid of any evidence that the Department intentionally failed to perform its duty or acted wantonly and willfully in utter indifference to the rights of others. Consequently, Shabazz failed to establish his claim of gross negligence, and the court erred in entering judgment in his favor.

## CONCLUSION

In sum, we hold that the trial court did not err in finding that Appellees had not violated CP § 11-701 or in entering judgment in favor of Appellees on Shabazz's claim of invasion of privacy. In addition, we hold that Appellees' *res judicata* argument was waived

25

and that Shabazz's claims were not barred by the applicable statute of limitations. Accordingly, we affirm those portions of the court's judgment.

Conversely, we hold that the court erred in entering judgment in favor of Shabazz on his gross negligence claim. We therefore reverse that portion of the court's judgment. Moreover, because it is unclear from the record whether the court's damages award stemmed from its judgment on Shabazz's gross negligence claim, we must also reverse the court's damages award and remand the case so that the court can determine if Shabazz is entitled to damages for his only remaining claim, *i.e.*, Appellees' violation of Article 17 of the Maryland Declaration of Rights.[2] If the court does determine that such an award is

---

[2] After considering the initial briefs filed in the instant appeal, we ordered the parties to submit supplemental briefs to address whether Shabazz could recover damages for a violation of Article 17 of the Maryland Declaration of Rights. In their responsive brief, Appellees conceded that Shabazz could recover such damages. We agree. Generally, a court may award damages for a violation of the Maryland Constitution if: 1) the constitutional provision is "self-executing;" and 2) a common law action exists to remedy the violation or, if none exists, such an action should be judicially recognized. *Benson v. State*, 389 Md. 615, 628-31 (2005). As to the first prong, a constitutional provision is "self-executing" if it "'supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced[.]'" *Id.* at 628 (quoting *Davis v. Burke*, 179 U.S. 399, 403 (1900)). As to the second prong, a right of action for monetary damages to remedy a constitutional violation may be recognized when the constitutional provision at issue conveys an individual right, imposes a corresponding duty on the government, and fails to provide an express remedy. *Id.* at 630-31. Article 17 satisfies both prongs. That provision states: "That retrospective Laws, punishing acts committed before the existences of such Laws, and by them only declared criminal are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required." Md. Decl. of Rts. Art. 17. The provision is "self-executing" because it supplies a rule by which the right at issue, the prohibition against *ex post facto* laws, may be enjoyed and protected. *See Doe*, 430 Md. 535 (recognizing an individual's right to injunctive and declaratory relief for a violation of Article 17). The provision also conveys an individual right, imposes a duty on

(continued…)

26

justified, the court should be mindful that any damages awarded must have been incurred within three years of the filing of Shabazz's complaint.[3]

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID 1/2 BY APPELLANT/CROSS-APPELLEE AND 1/2 BY APPELLEES/CROSS-APPELLANTS.**

---

the government, and fails to provide an express remedy. Thus, monetary damages may be awarded for a violation of that provision.

[3] Given that we are reversing for a reassessment of damages, we need not address Appellees' claim that the court's damages award was excessive.